# CASE NO. 21-13212-HH

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

IVETTE PEREZ and CARLOS LUFFI,

*Defendants-Appellants*,

v.

MARGLLI GALLEGO,

*Plaintiff-Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT
## COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

L.T. CASE NO. 20-24374-BB

## INITIAL BRIEF OF APPELLANTS

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, Florida 33128
Telephone:  (305) 375-5151

By:  Ezra S. Greenberg, Esq.
     Assistant County Attorney
     Attorney for Defendants-Appellants
     Carlos Luffi and Ivette Perez

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rule 26.1, Appellants Ivette Perez and Carlos Luffi certify that the following persons

and entities may have an interest in the outcome of this case:

1.  Bloom, Beth, United States District Judge

2.  Bonzon-Keenan, Geraldine Miami-Dade County Attorney

3.  Gallego, Marglli, Appellee

4.  Greenberg, Ezra, Counsel of Record for Appellants

5.  Luffi, Carlos, Defendant/Appellant

6.  Miami-Dade County

7.  Miami-Dade County Attorney's Office

8.  Napoleon, Hilton, Attorney for Appellee

9.  Otazo-Reyes, Alicia M., United States Magistrate Judge

10. Pastor, Bernard, Assistant County Attorney

11. Perez, Ivette, Defendant/Appellant

12. Rosenthal, Oren, Assistant County Attorney

13. Walters, Rachel, Assistant County Attorney

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

14.     Zaron, Erica, Assistant County Attorney

Respectfully submitted,

<u>/s/ Ezra S. Greenberg</u>
Ezra S. Greenberg
Florida Bar No. 85018
Assistant County Attorney
Attorney for Appellants
Dated: January 19, 2022.

**Statement Regarding Oral Argument**

Appellants respectfully request oral argument. Oral argument will assist the Court in crystallizing that qualified immunity should have been granted because the law was not clearly established that Appellants' conduct and statements would make them liable for a *Terry* stop conducted by ***other officers***.

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

# Table of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS ............................................ C-1 of 2

STATEMENT REGARDING ORAL ARGUMENT ................................................i

TABLE OF CONTENTS.......................................................................... ii

TABLE OF CITATIONS .........................................................................v

JURISDICTIONAL STATEMENT .........................................................x

STATEMENT OF THE ISSUE................................................................1

STATEMENT OF THE CASE.................................................................1

I.     Course of Proceedings in the District Court, Factual Allegations in the Complaint, Amended Complaint, and Second Amended Complaint, and Disposition Below ......................................................................3

a. The Complaint ........................................................................3

b. First Motion to Dismiss ...........................................................6

c. Amended Complaint and Second Motion to Dismiss ................................7

d. Motion for Leave to Amend .....................................................10

e. Second Amended Complaint....................................................11

f. Third Motion to Dismiss ........................................................12

g. The District Court Denies Qualified Immunity........................................12

II.    Standard of Review ...............................................................13

SUMMARY OF THE ARGUMENT ...................................................14

ARGUMENT ........................................................................................18

I.    Plaintiff Failed to Allege the Violation of a Clearly Established
Constitutional Right by *Officers Luffi and Perez* ..........................18

    A. Qualified Immunity Shields Government Officials from Suit
in Novel Factual Situations Where Liability is Not Obvious
from Prior Cases ......................................................................18

    B. Neither Officer Luffi Nor Officer Perez Seized Gallego
Within the Meaning of Clearly Established Law .....................23

        1. General Fourth Amendment/*Terry* Stop Principles Do
Not Draw a Brightline Clearly Establishing that Officer
Luffi and Perez's Actions Were Tantamount to
Ordering or Authorizing Gallego's Detention ...............24

            a.  Officer Perez ........................................................27

            b.  Officer Luffi .........................................................28

        2. Pre-existing Caselaw Supports that Equivocal
Statements and Gestures Do Not Create Fourth
Amendment Liability .....................................................30

        3. *Jones v. Cannon* Does Not Compel Fourth Amendment
Liability on the Factual Circumstances Alleged Here ...................32

            a.  Jones's First Holding Pertained to a "Non-Arresting" Officer
Who Jointly Participated in Practically Every Aspect of the
Plaintiff's Initial Detention With the Arresting Officer......32

            b.  *Jones's* Second Holding Limited the Non-Arresting Officer's
Liability Because a Finding of Liability Would Have Imposed
a Duty to Intervene..............................................35

4. Diction in *Jordan v. Mosley* Cannot Clearly Establish the Law ............................................................................38

CONCLUSION ....................................................................................40

CERTIFICATE OF SERVICE ...............................................................41

CERTIFICATE OF COMPLIANCE.......................................................41

# Table of Citations

**Page(s)**

## Cases

*Alcocer v. Mills,*
  906 F.3d 944 (11th Cir. 2018) ...................................................................23

*Am. Bancard, LLC v. E. Payment Svs., Inc.*
  18-CV-80681, 2018 WL 3708462 (S.D. Fla. Aug. 3, 2018) ........................ 13, 14

*Am. Dental Ass'n v. Cigna Corp.,*
  605 F.3d 1283 (11th Cir. 2010) .................................................................14

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................ 19, 22

*Ansley v. Heinrich,*
  925 F.2d 1339 (11th Cir. 1991) .................................................................19

*Ashcroft v. al-Kidd,*
  563 U.S. 732 (2011) ................................................................................21

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................14

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ................................................................................13

*Brower v. County of Inyo,*
  489 U.S. 593 (1989) .......................................................................... 24, 25, 26

*Brown v. City of Huntsville, Ala.,*
  608 F.3d 724 (11th Cir. 2010) .................................................... 15, 17, 18, 25, 36

*Casines v. Murchek,*
  766 F.2d 1494 (11th Cir. 1985) .................................................................22

*City of Escondido, Cal. v. Emmons*,
   139 S. Ct. 500 (2019) ................................................................... 21, 39

*\*Corbitt v. Vickers*,
   929 F.3d 1304 (11th Cir. 2019) ........................................ 19, 20, 21, 23

*Denno v. Sch. Bd. of Volusia County, Fla.*,
   218 F.3d 1267 (11th Cir. 2000) ................................................................20

*Echols v. Lawton*,
   913 F.3d 1313 (11th Cir. 2019) ........................................................ 22, 30

*Evans v. Stephens*,
   407 F.3d 1272 (11th Cir. 2005) (en banc ..............................................22

*Grider v. City of Auburn, Ala.*,
   618 F.3d 1240 (11th Cir. 2010) ................................................................18

*Guertin v. Michigan*,
   924 F.3d 309 (6th Cir. 2019) (Kethledge, J., dissenting from denial of rehearing
   en banc .....................................................................................................21

*Hamilton By & Through Hamilton v. Cannon*,
   80 F.3d 1525 (11th Cir. 1996) ................................................................38

*Hunter v. Bryant*,
   502 U.S. 224 (1991).................................................................................19

*J W by & through Tammy Williams v. Birmingham Bd. of Educ.*,
   904 F.3d 1248 (11th Cir. 2018) ..............................................................23

*\*Jones v. Cannon*,
   174 F.3d 1271 (11th Cir. 1999) ...................................................... passim

*Jones v. Fransen*,
   857 F.3d 843 (11th Cir. 2017) ................................................................35

*\*Jordan v. Mosley*,
   487 F.3d 1350 (11th Cir. 2007) ........................................... 12, 16, 38

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

*McClish v. Nugent,*
    483 F.3d 1231 (11th Cir. 2007) ............................................................34

*Merricks v. Adkisson,*
    785 F.3d 553 (11th Cir. 2015) ........................................ 20, 31, 32, 33

*Michigan v. Chesternut,*
    486 U.S. 567 (1988) ............................................................................25

*Militello v. Sheriff of Broward Sheriff's Office,*
    684 F. Appx. 809 (11th Cir. 2017) .....................................................31

*Moore v. Pederson,*
    806 F.3d 1036 (11th Cir. 2015) ............................................ 34, 38, 39

*Mullenix v. Luna,*
    136 S. Ct. 305 (2015) ............................................................ 17, 21, 22

*Nieves v. Bartlett,*
    139 S.Ct. 1715 (2019) .........................................................................25

*Oliver v. Fiorino,*
    586 F.3d 898 (11th Cir. 2009) ............................................................20

*Papasan v. Allain,*
    478 U.S. 265 (1986) ............................................................................14

*Pearson v. Callahan,*
    555 U.S. 223 (2009) ............................................................................19

*Post v. City of Fort Lauderdale,*
    7 F.3d 1552 (11th Cir. 1993) ..............................................................20

*Rance v. Bradshaw,*
    15-CV-81210-KAM, 2016 WL 3199002 (S.D. Fla. June 9, 2016) ......37

*Redd v. City of Enterprise,*
    140 F.3d 1378 (11th Cir. 1998) ..........................................................18

*Reichle v. Howards,*
    566 U.S. 658 (2012) ................................................................... 19, 22

*Scott v. Harris,*
    550 U.S. 372, 127 S. Ct. 1769 (2007) ................................................ vi

*St. George v. Pinellas Cnty.,*
    285 F.3d 1334 (11th Cir. 2002) ......................................................13

*Stallworth v. Hurst,*
    2:18-CV-1005-ALB-SRW, 2019 WL 5070196 (M.D. Ala. Oct. 8, 2019) ..........36

*Tarantino v. Citrus County Gov't,*
    5:12-CV-434-OC-32PRL, 2014 WL 4385550 (M.D. Fla. Sept. 4, 2014)............37

*Thomas ex rel. Thomas v. Roberts,*
    323 F.3d 950 (11th Cir. 2003) ........................................................23

*Torres v. Madrid,*
    141 S. Ct. 989 (2021) ........................................................ 25, 27, 28

*Troupe v. Sarasota County, Fla.,*
    419 F.3d 1160 (11th Cir. 2005) .......................................................25

*United States v. Baker,*
    290 F.3d 1276 (11th Cir. 2002) ......................................................16

*United States v. De La Rosa,*
    922 F.2d 675 (11th Cir. 1991) .......................................................26

*United States v. Perez,*
    443 F.3d 772 (11th Cir. 2006) ................................................... 17, 26

*Wade v. United States,*
    13 F.4th 1217 (11th Cir. 2021) .......................................................22

*Waldron v. Spicher,*
    954 F.3d 1297 (11th Cir. 2020) .......................................................23

*Wesby v. D.C.*,
816 F.3d 96 (D.C. Cir. 2016)...............................................................21

*\*West v. Davis*,
767 F.3d 1063 (11th Cir. 2014) ................................................. passim

*White v. Pauly*,
137 S. Ct. 548 (2017).........................................................................20

*Wilkerson v. Seymour*,
736 F.3d 974 (11th Cir. 2013) ...........................................................33

**Statutes**

28 U.S.C. § 1291 ............................................................................... vi

28 U.S.C. § 1331 ............................................................................... vi

42 U.S.C. § 1983 ............................................................................... vi

**Constitutional Provisions**

U.S. Const. Art. VI.............................................................................22

## Jurisdictional Statement

The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff alleged a violation arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the U.S. Constitution.

This Court has jurisdiction pursuant to 28 U.S.C. § 1291. An interlocutory order denying qualified immunity is immediately appealable. *Scott v. Harris*, 550 U.S. 372, 376 n.2, 127 S. Ct. 1769, 1774 n.2 (2007) ("an order denying qualified immunity is immediately appealable even though it is interlocutory").

The appeal is timely because the order denying Appellants' motion to dismiss based on qualified immunity was entered on August 23, 2021, R.61, and the Notice of Appeal was filed on September 20, 2021, R.65.

## Statement of the Issue

Plaintiff Marglli Gallego ("Gallego") alleges that she was detained by Miami-Dade Police Officers Rickie Garcia and Flavio Escobar on March 6, 2018. Miami-Dade Police Officers Ivette Luffi and Carlos Perez ("Officers Luffi and Perez" or "Appellants"), Appellants here, were present during the detention. Gallego does not allege that either Appellant ever ordered, instructed, directed, or authorized her detention, ever physically participated in her physical restraint, ever assumed custody of her, or ever gave her any commands restricting her freedom of movement. Was it clearly established law on March 6, 2018, that Officer Luffi or Officer Perez could be individually liable for a Fourth Amendment violation based on an unlawful *Terry* stop under these circumstances?

## Statement of the Case

During a Homeowners Association ("HOA") meeting on March 6, 2018, Officer Perez allegedly told Plaintiff Marglli Gallego "something along the lines of, 'I can't wait to put you in a chair and ask you questions.'" R.46 ¶79. Gallego allegedly responded "I am represented by a lawyer, you can't do that," at which point a ***different*** officer, Officer Garcia, allegedly pushed Gallego away and told her to "sit in this chair right now and don't move." *Id.* ¶¶80-81. Officer Garcia and a ***third*** Officer, Officer Escobar, allegedly sat down on chairs on each side of Gallego and

1

sandwiched her there for four-and-a-half hours. *Id.* ¶¶83-84, 105. During that time, a ***fourth*** Officer, Officer Carlos Luffi, periodically picked up his shirt and flashed his handcuffs in the direction of Gallego, Escobar and Garcia. *Id.* ¶¶ 95-97. Officers Perez and Luffi moved to dismiss based on qualified immunity because no clearly established law provided fair notice that *their* conduct would create liability for a seizure under the Fourth Amendment. R.53.

The district court acknowledged that the operative Second Amended Complaint ("SAC') presented "novel facts," R.72 at 9:17, but nevertheless denied qualified immunity even though there are no allegations that Officer Perez or Officer Luffi ordered, instructed, directed, or authorized Gallego's detention. There are no allegations that either of them ever gave commands to Gallego, made physical contact with her, restricted her freedom of movement, or told anyone else to do any of those things. While the SAC alleges that two officers, Escobar and Garcia, seized Gallego when they gave her commands and physically "sandwiched" her, neither Gallego nor the district court identified binding caselaw that would have placed ***beyond debate*** the question of whether either Appellant, Officer Perez or Officer Luffi, were liable for that seizure.

Departing from the Supreme Court and this Court's repeated instructions in qualified immunity cases, the district court denied qualified immunity by reverting to broad general principles of law and applying them to the "novel facts" of this case.

The district court reasoned that Officer Luffi and Perez "participated" in the seizure by their statements and gestures, thereby causing a Fourth Amendment violation. The district court then proceeded to deny the Officers' motion to dismiss on the basis that Circuit caselaw indicates that a non-arresting officer who "participates" in an arrest may share liability. But irrespective of whether the district court correctly found that Gallego stated a claim against Officers Luffi or Perez for a Fourth Amendment violation based on their alleged participation (and we certainly don't concede that it did), the district court's cursory decision on the second qualified immunity prong—whether the right was clearly established—violated binding precedent. The district court erred when it relied on two cases that do not "clearly establish" a constitutional violation on the facts here and therefore the Court should reverse its order denying the Appellants' motion to dismiss the SAC.

## I. Course of Proceedings in the District Court, Factual Allegations in the Complaint, Amended Complaint, and Second Amended Complaint, and Disposition Below

### a. The Complaint

Gallego filed her initial complaint in the district court in October 2020, which consisted of four identical counts alleging an unlawful *Terry* stop against four officers: Defendants Perez, Luffi, Garcia and Escobar. R.1 ¶¶49-84. The only factual allegations supporting that a *Terry* stop occurred at all were that Officer Garcia pushed Gallego and told her to "sit down in this chair right now and don't move."

*Id.* ¶ 35. Gallego claimed that she did as she was told and that Officers Garcia and Escobar then sat down on chairs on both sides of her, essentially "sandwiching" her. *Id.* ¶¶ 36-38. With respect to Officers Perez and Luffi, on the other hand, Gallego alleged no physical contact or any steps taken by either to restrain her liberty.[1]

Gallego alleged that Officers Perez and Luffi showed up unannounced to an HOA election meeting on March 6, 2018. *Id.* ¶¶ 22-24. Gallego informed Perez and Luffi that they were not allowed to be present. *Id.* ¶ 25. Joel Mercado, who is a Miami-Dade Corrections officer who owns property in the community, also told Perez and Luffi that they were not allowed to be present. *Id.* ¶ 26. Perez and Luffi stayed anyway. *Id.* ¶ 27. Gallego alleges that Perez and Luffi then told her and other board members that they were going to confiscate the election box where the unopened and un-tabulated ballots were being held despite lacking probable cause

---

[1] Each complaint has alleged in a "background" section that Officers Perez and Luffi have been involved for the past three years in making defamatory statements regarding Gallego's conduct as President of the Hammocks Community Association, a Florida HOA located in Southwest Miami-Dade County. *E.g.*, R.1 ¶¶ 7-21; R.46 ¶¶ 7-36. These allegations form the basis of a separate lawsuit that Gallego filed against Officers Perez and Luffi in state court, alleging defamation and tortious interference with a business relationship. *See Gallego v. Perez*, Case No. 20-23064 (11th Jud. Cir. Fla. Oct. 26, 2020). Gallego has sought an order staying her state court lawsuit so that she would not be forced to invoke her Fifth Amendment right against self-incrimination in response to discovery. As it relates to this case, Gallego repeatedly argued in the district court that these allegations of Appellants' past conduct could somehow impact whether they committed an unlawful *Terry* stop on March 6, 2018. Ultimately, the district court never embraced this argument and denied the motion to dismiss the SAC on other grounds.

or a search warrant to confiscate the ballots. *Id.* ¶¶ 28-29. Gallego told Officers Perez and Luffi not to touch the ballots. *Id.* ¶ 30.

Gallego alleges that she told Officer Luffi that he must be a relative of someone who does not want her on the Board. *Id.* ¶ 31. Officer Perez responded "How do you know that? Why did you say that?" *Id.* ¶ 32. Perez then told Gallego "'something along the lines of, 'I can't wait to put you in a chair and ask you questions,'" to which Gallego responded, "I am represented by a lawyer, you can't do that." *Id.* ¶¶ 33-34. It is at this point that Gallego alleges that Officers Garcia and Escobar detained her:

> Officer Ricky Garcia, who was present during the conversation, immediately pushed Ms. Gallego away and told her to "sit down in this chair right now and don't move." Ms. Gallego sat down in the chair as directed. Officers Garcia and Escobar, who was also present for the entire incident, then sat down on chairs that were located on each side of Ms. Gallego. Both officers sat in very close proximity to Ms. Gallego, essentially "sandwiching" her.

*Id.* ¶¶ 35-38. Gallego alleged that she did not feel free to leave. *Id.* ¶ 40. She further alleged that while she was sitting between Officers Garcia and Escobar, Office Luffi periodically lifted up his untucked shirt and flashed his handcuffs at her and Officer Perez repeated her statement that "I'm [sic] am going to be able to sit across from you and ask you questions," to which Gallego repeatedly responded that she was represented by an attorney. *Id.* ¶¶ 38, 41-42. Gallego alleged that the Officers ultimately departed without the election ballots after she was unlawfully restrained

for an unspecified "extended period of time." *Id.* ¶¶ 47-48.

b. <u>First Motion to Dismiss</u>

Officers Luffi and Perez moved to dismiss the Complaint based on qualified immunity. R. 22.[2] They argued that they had qualified immunity because there were no allegations that their conduct would constitute a seizure under clearly established law. *Id.* at 8-10. Appellants explained that they were not alleged to have personally restrained Gallego, nor ordered her restraint. *Id.* Gallego alleged that, prior to being restrained by Officer Garcia, Officer Perez "told [her] something along the lines of, 'I can't wait to put you in a chair and ask you questions.'" R.1 ¶ 33. With respect to Officer Luffi, Gallego alleged that, *after she had already been restrained by Officers Garcia and Escobar*, Officer Luffi "periodically lift[ed] up his untucked shirt and flashed his handcuffed at [her]." *Id.* ¶ 39. No clearly established law provided that this conduct could make an officer liable for a seizure by another officer.

The district court heard the motion on March 11, 2021. The district court found that Gallego's allegations against Officers Luffi and Perez were insufficient to show that they caused, instigated or participated in her detention. R.35 at 16:12-22, 20:1-8, 25:23-25. The district court also found that any pre-incident history Gallego had with Officers Luffi and Perez couldn't impact whether they objectively

---

[2] Officers Garcia and Escobar answered the Complaint. R. 20-21.

restrained her on the night in question. *Id.* at 17:8-21. Therefore, the district court concluded that Gallego had not adequately alleged that Officers Luffi or Perez's individual actions violated Gallego's constitutional rights. *Id.* at 21:14-22:1. Accordingly, it dismissed Counts I and II and granted Gallego leave to file an Amended Complaint, without needing to address the second qualified immunity prong of whether the law was clearly established. R.34.

c. <u>Amended Complaint and Second Motion to Dismiss</u>

Gallego filed her Amended Complaint on March 25, 2021. R. 36. With respect to the actions of Officers Luffi and Perez surrounding the alleged *Terry* stop on March 6, 2018, Gallego's allegations were essentially unchanged. Gallego still alleged that prior to being restrained by Officer Garcia, Officer Perez "told [her] something along the lines of, 'I can't wait to put you in a chair and ask you questions.'" *Id.* ¶ 71; *compare with* R.1 ¶ 33. Gallego still alleged that Officer Perez repeated the statement after she was restrained. R.36 ¶ 98; *compare with* R.1 ¶ 41. With respect to Officer Luffi, Gallego modified her allegation from Luffi "*periodically* lift[ing] up his untucked shirt and flas[ing] his handcuffs at [her]," R.1 ¶ 39 (emphasis added), to specifically alleging particular times that Luffi flashed his handcuffs: Gallego alleged that when Officer Garcia and Escobar first detained her "Luffi lifted up his untucked shift and flashed his handcuffs in their direction," that Officers Garcia and Escobar could see Luffi's actions, and that Luffi intentionally

flashed his handcuffs numerous times in Officer Garcia and Escobar's direction while Gallego was being detained. R.36 ¶¶ 87-89. The Amended Complaint thus replaced the allegation that Luffi flashed his handcuffs "periodically" with allegations that Luffi flashed his handcuffs once at the onset of the detention, *id.* ¶ 87, and then "numerous times" during the detention in the direction of Escobar and Garcia (who were allegedly sitting on both sides of Gallego), *id.* ¶ 89.

Attempting to remedy the district court's finding that she had failed to adequately allege that Officers Luffi and Perez sufficiently participated in the *Terry* stop to make them liable, Gallego interjected new allegations that Officer Perez's statement (that she couldn't wait to put Plaintiff in a chair and ask her questions) ***caused*** Officer Garcia to initiate the detention and, similarly, that Officer Luffi's flashing of the handcuffs was a signal to Officers Escobar and Garcia to prolong the detention. *Id.* ¶¶ 77-82, 85-86, 90-101.

Officers Luffi and Perez moved to dismiss the Amended Complaint on April 8, 2021 based on qualified immunity. R.39. They argued that the relevant allegations regarding Luffi and Perez's conduct was materially the same as those the district court already rejected. *Id.* at 10-13. They further argued that the additional allegations regarding causation were conclusory allegations that could not be credited under *Twombly* and *Iqbal*. *Id.* at 13-14. These statements were not allegations of fact. In other words, they didn't describe any additional actions that

either Officer Perez or Officer Luffi took beyond what was alleged in the initial Complaint. Rather, they were legal conclusions, interjected to satisfy the legal element of direct participation in or instigation of the *Terry* stop, which the district court had found lacking. As a result, Appellants argued that *Iqbal* and *Twombly* teach that they are not entitled to the presumption of truth and cannot be considered on a motion to dismiss. *See id.* at 13-14. Moreover, since qualified immunity is based upon an evaluation of objective conduct, the question is always about whether the Appellants actions objectively violated the Fourth Amendment. How Officers Garcia and Escobar subjectively interpreted the conduct of Officer's Luffi or Perez was not relevant to the clearly established analysis. *See id.* at 15.

As to the few additional ***factual*** allegations Gallego provided in the Amended Complaint, Appellants argued that these additional allegations were ***unrelated*** to their specific conduct and actions with respect to the *Terry* stop:

First, Gallego provided additional allegations regarding Officers Luffi and Perez's arrival at the election, before any *Terry* stop occurred. R.36 ¶¶ 26-68. The thrust of these allegations was that Officers Luffi and Perez did not have the right to be present at the HOA election and remained despite being asked to leave. But this fact, Appellants argued, was already alleged in the first complaint and the district court had not found it probative of whether Officers Luffi and Perez's individual conduct could make them liable for a *Terry* stop effected by two other officers.

Officers Luffi and Perez did not enter Gallego's living room, after all, but an HOA clubhouse that served more than 6,500 residential units. *Id.* ¶¶ 10, 29-30. Even if they had no right to enter the clubhouse, it hardly followed (and certain not from clearly established law) that such action constituted a *Terry* stop of Gallego or anyone else who was present.

Second, Gallego alleged that, upon their arrival, Officers Luffi and Perez told Officer Garcia that **they** (i.e., Luffi and Perez) were going to arrest Gallego. *Id.* ¶¶ 42-43. But nothing alleged suggests that the threatened arrest ever happened. And, most critically, Gallego did not allege that Officer Luffi or Perez ever actually instructed or directed Officer Garcia to detain her.

Third, Gallego clarified that her allegation that she was detained for "an extended period of time," R.1 ¶ 48, was in fact four and a half hours, and that she was only released after Officers Perez and Luffi left. R.36 ¶¶ 97, 102. But, again, Gallego did not allege that Officer Perez or Luffi commanded her detention **or release** at any time and this allegation was not materially different from the "extended period of time" allegation in the initial Complaint.

### d. Motion for Leave to Amend

On or about April 15, 2021, shortly after Appellants moved to dismiss the Amended Complaint, Gallego was arrested pursuant to a warrant for second degree grand theft and committing an organized scheme to defraud, a second and first

degree felony, respectively. R.40 ¶¶ 10-11; R.40-1. Officer Ivette Perez was the affiant for the warrant. *Id.* Rather than respond to the Motion to Dismiss the Amended Complaint, Gallego moved for leave to amend again. Appellants opposed the motion because the additional allegations Gallego sought to included pertained to post-incident events that could not possibly impact Appellants' liability for the alleged March 6, 2018 *Terry* stop. The district court, however, granted the motion for leave to amend the next day without awaiting a response. *See* R.44-46.

e. Second Amended Complaint

The SAC, filed on May 14, 2021, retained the allegations from the Amended Complaint with only insubstantial stylistic changes in the first 117 paragraphs. *Compare* R.46 ¶¶ 7-117 *with* R.36 ¶¶ 7-110.[3] The SAC then included an additional 63 paragraphs and 13 attachments challenging the factual predicate of Officer Perez's arrest warrant. R.46 ¶¶ 118-181 & Exhibits A-M. However, the SAC did not assert any new claims based upon these allegations or Gallego's arrest and instead contended that these new allegations were relevant to show the "absence of mistake" on the part of the Officers Perez and Luffi with respect to the alleged March 6, 2018 *Terry* stop. *Id.* ¶ 118 n.4.

---

[3] It appears that the only factual amendments in these paragraphs were additional background allegations regarding the organization of the Hammocks HOA, *see* R.46 ¶¶ 11-12, 14-16, and a footnote about *another* prior incident where Officer Luffi accompanied a homeowner to request Hammocks documents. *Id.* ¶ 77 n.2.

## f. Third Motion to Dismiss

Officers Luffi and Perez moved to dismiss again based on qualified immunity. R.53.[4] Apparently conceding that all the new allegations regarding the post-incident arrest had no legal relevance to whether Officers Perez and Luffi have qualified immunity for the sole Fourth Amendment violation asserted against them, Gallego's response ignored all the new allegations in her SAC regarding her arrest. *See* R.56.[5]

## g. The District Court Denies Qualified Immunity

The district court heard the motion to dismiss the SAC on August 23, 2021. The district court acknowledged that the case presented "novel facts," R.72 at 9:17 ("And I know these are certainly novel facts."), but found that Officers Perez and Luffi could be found to violate clearly established law, namely *Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999), and *Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007). *See* R.72 at 36:9-15. The district court found that these cases established that "a participant in an arrest, even if not the arresting officer, may be liable if the officer knew the arrest lacked any constitutional basis and participated in some way." *Id.*

The district court found that Officer Luffi participated in Gallego's detention because he previously told Officer Garcia that he was going to arrest Gallego, he

---

[4] Officers Garcia and Escobar answered again. R. 51-52.
[5] Accordingly, we will not discuss any of the post-incident allegations as neither Gallego nor the district court argued below that any of them had any bearing on whether the motion to dismiss should be granted.

was admitted to the clubhouse by Officer Garcia, made an unsuccessful attempt to take the ballot box, and then, after Gallego was detained, flashed his handcuffs in the direction of Officers Garcia and Escobar, which, according to the district court, confirmed that he was going to arrest her. *Id.* at 35:2-25. As to Officer Perez, the district court cited her statement "I can't wait to put you in a chair and ask you questions," and that Gallego was then placed in the chair after that statement was made as a sufficient factual basis to support that she participated in the detention. *Id.* at 36:21-37:6. The district then went on to find that the "right is clearly established" based on *Jones* without further elaboration. *Id*. at 37:10-16.

A paperless minute order was entered the same day denying the motion to dismiss "for the reasons stated on the record." R.61. Officers Luffi and Perez timely appealed. R.65.

## II.    Standard of Review

The district court's denial of a motion to dismiss based on qualified immunity is reviewed *de novo*. *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Review is "limited to the four corners of the complaint." *Id.* Factual allegations in complaint must be accepted as true, but not "legal conclusion[s] couched as a factual allegation[s].'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Am. Bancard, LLC v. E. Payment Sols., Inc.*, 18-CV-80681, 2018 WL 3708462, at *4 (S.D. Fla.

Aug. 3, 2018) (allegation that defendant "'participated directly or indirectly in the conduct of the affairs of the enterprise' . . . is a mere legal conclusion couched as a factual allegation and does not satisfy the pleading requirements of *Twombly* and *Iqbal*").

The Court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). The complaint must allege facts that are not merely consistent with liability but that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## Summary of the Argument

Both this Court and the Supreme Court have repeatedly instructed lower courts that it is the application of the law to the particular facts of the case—not a general legal rule—that must be clearly established to overcome an official's entitlement to qualified immunity. The district court erred when it framed the issue in general terms: whether an officer who knows probable cause is lacking and participates in an arrest "in some way" is liable for a violation of that person's constitutional rights. R.72 at 36:9-15.

The district court should have asked whether there was a binding precedent

that indicates that the type of gestures and statements specifically alleged here objectively constitute participation in a *Terry* stop or arrest. Because the district court asked the wrong question, it reached the wrong answer.

This Court has indicated that a non-arresting officer who ***authorizes*** an arrest can be liable under the Fourth Amendment for a false arrest, *see Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 737 (11th Cir. 2010), but it has never said, or come close to saying, that the type of offhand comments and gestures alleged here can result in liability for an extended *Terry* stop or arrest. In this respect, this case is as much about what Gallego has not alleged as what she has. Despite the length of her pleading, there are no allegations that Officer Luffi or Perez ever requested, instructed, or otherwise authorized another officer to detain Gallego, ever physically touched Gallego or restrained her freedom of movement in any way, or ever gave any commands whatsoever to any other officer related to Gallego's detention or to Gallego herself.

Qualified immunity should have been granted because the caselaw in this Circuit has not staked out a bright line defining when, absent a clear order or direction to a fellow officer (which is not alleged here), a non-seizing officer can be held individually liable for a seizure by another officer. The district court relied on two opinions from arrest scenarios that did not clearly establish that Officer Luffi or Officer Perez violated Gallego's constitutional rights here. The first, *Jones*, held that

liability could be imposed for an unlawful arrest on a non-arresting officer, 174 F.3d at 1284, but on close review he was the "non-arresting officer" in name-only. He was involved in the investigation, took notes during the plaintiff's interview, was the sole officer with the plaintiff at the police station at various times, and jointly transported the plaintiff to jail with the "arresting" officer. The only real distinction between the two officers was that "arresting" officer informed the plaintiff he was under arrested and completed the arrest affidavit. And the second, *Jordan*, references the liability of non-arresting officers only in dicta. 487 F.3d at 1354. Thus, neither *Jones* nor *Jordan* provide the type of clear notice that qualified immunity requires.

And beyond outlining the general facts that go into the *Terry* stop analysis, guidance from this Court on what it takes to be considered a "participant" in an unlawful *Terry* stop does not yet exist. The controlling law provides that in determining whether a *Terry* stop occurred "the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *United States v. Baker*, 290 F.3d 1276, 1278 (11th Cir. 2002) (quotations omitted). And various factors have been identified to determine whether a *Terry* stop has occurred. *See United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006). But these general standards do not address the issue of liability for a non-detaining officer who is present. Moreover, there is one

preexisting case, *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), which actually suggests that the Appellants' language and conduct here should not be read to authorize a *Terry* stop or arrest.

Correctly assessing the legal landscape at the time of this incident, the state of the law in this Circuit did not compel the conclusion that flashing handcuffs and stating a desire to ask questions while the subject sits in a chair transcend a bright-line. Indeed, in two rounds of briefing in the district court, Gallego was unable to cite any controlling authority specifying ***what*** level of participation an officer must have to be liable for another officer's *Terry* stop, as opposed to an arrest, much less identify any controlling precedent that would apply to the facts of this case.

Simply put, concluding that Officer Luffi and Perez participated in arresting Gallego is not clearly established by the two cases the district court relied upon. And even if those two cases could be analogized to the conduct here, analogies do not clearly establish the law; the conclusion that Officers Perez and Luffi are liable for the alleged *Terry* stop must "follow immediately" from *Jones* or *Jordan*—and it simply doesn't. *See Mullenix v. Luna*, 136 S. Ct. 305, 309 (2015). Alleging that Officers Garcia and Escobar fulfilled Officer Luffi and Perez's subjective desires is insufficient absent conduct from Officer Luffi and Perez that objectively establishes, in accordance with clearly established law, that they instructed their fellow officers to restrain Gallego. *Cf. Brown*, 608 F.3d at 737 ("Plaintiffs have shown that Norris

arguably wanted Hudson to arrest Sonia. But an officer's subjective intent is irrelevant in a qualified immunity analysis."). The district court erred in denying the motion to dismiss. The order on appeal should be reversed.

## Argument

## I. Plaintiff Failed to Allege the Violation of a Clearly Established Constitutional Right by *Officers Luffi and Perez*

### A. Qualified Immunity Shields Government Officials From Suit in Novel Factual Situations Where Liability is Not Obvious From Prior Cases

Qualified immunity exists to "allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1254 (11th Cir. 2010) (citation omitted). The protection of qualified immunity "is the usual rule; only in exceptional cases will government actors have no shield against claims made against them" individually. *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998) (citation omitted).

Once an official establishes that he acted within his discretionary authority, the burden shifts to the plaintiff (1) to demonstrate "a violation of a constitutional right" and (2) to also show that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Once an officer has raised the defense of qualified immunity, the

burden of persuasion on that issue is on the plaintiff." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation omitted).[6]

"Immunity ordinarily should be decided by the court long before trial." *Hunter v. Bryant*, 502 U.S. 224, 228 (1991). It "should be resolved at the earliest possible stage of a litigation," *Anderson v. Creighton*, 483 U.S. 635, 646 (1987), and "preferably on pretrial motions," *Ansley v. Heinrich*, 925 F.2d 1339, 1348 (11th Cir. 1991). The question on prong one is whether the officers acted reasonably under settled law, not whether another reasonable, or more reasonable, interpretation of the events can be constructed after the fact. *See Hunter*, 502 U.S. at 228.

On prong two, a right is clearly established only if "every reasonable officer would have understood that what he [was] doing violate[d] that right," and "existing precedent . . . placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Public "officials are not obligated to be creative or imaginative in drawing analogies from previously decided cases," *Corbitt*, 929 F.3d at 1311. To the contrary, an "official's awareness of the existence of an ***abstract right*** does not equate to knowledge that his conduct infringes the right." *Id.* at 1312 (emphasis added) (cleaned up). As such, the "clearly established law should not be defined at a high level of generality" but "must be particularized

---

[6] Gallego conceded discretionary authority in the district court so we will not discuss it here. R.72 at 3:11-24.

to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (cleaned up).

"The line between lawful and unlawful conduct is often vague." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993). But the "'clearly established' standard demands that a bright line be crossed." *Id.* "The line is not found in abstractions . . . but in studying how these abstractions have been applied in concrete circumstances." *Id.* This Circuit has stated many times that "if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Corbitt*, 929 F.3d at 1312 (quoting *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009)); *see also Post*, 7 F.3d at 1557.

The Court considers the "legal landscape" as it existed at the time of the incident to determine if the law compelled the conclusion that a "bright-line" was crossed. *Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1271-75 (11th Cir. 2000). This includes examining cases that can reasonably be to read to support the position that the law was not clearly established. *Merricks v. Adkisson*, 785 F.3d 553, 564 (11th Cir. 2015) (explaining that law was not clearly established because a reasonable reading of a prior precedent favored the officer's position that caselaw had not prohibited their conduct).

In the absence of a pre-existing bright-line, the "Supreme Court has repeatedly told lowers court they cannot "create[] a new rule and then appl[y] that new rule retroactively against" an official. *Wesby v. D.C.*, 816 F.3d 96, 111 (D.C. Cir. 2016)

(Kavanaugh, J., dissenting from denial of rehearing en banc). "No official—no matter how blameworthy he might be on moral grounds—can be expected to recognize in advance that a court will recast a legal rule so that it applies to conduct to which it has never applied before." *Guertin v. Michigan*, 924 F.3d 309, 317 (6th Cir. 2019) (Kethledge, J., dissenting from denial of rehearing en banc).

Rather, "the qualified immunity analysis requires a clearly established right to be defined with specificity." *Corbitt*, 929 F.3d at 1316. The Supreme Court has repeatedly instructed lower courts that they may not "define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308 (quoting *al-Kidd*, 563 U.S. at 742); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("The Court of Appeals should have asked whether clearly established law prohibited the officers from stopping and taking down a man in these circumstances. Instead, the Court of Appeals defined the clearly established right at a high level of generality by saying only that the 'right to be free of excessive force' was clearly established."). And the proposition of law which the plaintiff must establish to succeed on her claims must not be the result of analogies and inferences that those with legal training can readily draw; it must "follow immediately" from existing caselaw. *Mullenix*, 136 S. Ct. at 309 (quoting *Anderson*, 483 U.S. at 641). In other words, "law is clearly established if the preexisting law dictates, that is, truly compels, the conclusion for all reasonable, similarly situated public officials that

what Defendant was doing violated Plaintiffs' federal rights in the circumstances." *Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021) (quoting *Evans v. Stephens*, 407 F.3d 1272, 1282 (11th Cir. 2005) (en banc)).

"So even when an official behaves badly, qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Echols v. Lawton*, 913 F.3d 1313, 1325 (11th Cir. 2019). "And a clearly established violation of state law cannot put an official on notice that his conduct would also violate the Constitution because 'section 1983 protects only against violations of federally protected rights.'" *Id.* (quoting *Casines v. Murchek*, 766 F.2d 1494, 1501 n.10 (11th Cir. 1985)). "Section 1983 is not a font of tort law that converts every state law tort claim into a federal cause of action." *Echols*, 913 F.3d at 1326 (cleaned up). "When a plaintiff complains that a public official has violated the Constitution, qualified immunity shields the official from individual liability unless he had fair notice that his alleged conduct would violate 'the supreme Law of the Land.'" *Id.* (quoting U.S. Const. Art. VI).

Importantly, "courts may grant qualified immunity on the grounds that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Reichle*, 132 S. Ct. at 2093. Finally, only binding decisional law—that is published cases of the U.S. Supreme Court, the Eleventh Circuit, and the Florida Supreme Court—can

clearly establish the law for qualified immunity purposes. *E.g.*, *Thomas ex rel. Thomas v. Roberts*, 323 F.3d 950, 953 (11th Cir. 2003). As such, unpublished cases do not serve as binding precedent and cannot be relied upon to define clearly established law, *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 (11th Cir. 2018); they can, however, be used to show that that the right was *not* clearly established under the "relevant legal landscape," *Waldron v. Spicher*, 954 F.3d 1297, 1307 (11th Cir. 2020); *Corbitt*, 929 F.3d at 1319 n.14. Applying these principles here indicates that Officers Luffi and Perez did not violate clearly established law and the district court erred by denying their qualified immunity defense.

### B. Neither Officer Luffi Nor Officer Perez Seized Gallego Within the Meaning of Clearly Established Law

A threshold question is whether Gallego was "seized" at any point during her encounter with the four Officers. *See Corbitt*, 929 F.3d at 1313. And we concede, taking the SAC's allegations as true, that she was seized, by *Officers Garcia and Escobar*, who allegedly ordered her to sit and physically "sandwiched" her.

But "each defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions." *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). The Court "must be careful to evaluate a given defendant's qualified-immunity claim, *considering only the actions and omissions in which*

*that particular defendant engaged.*" *Id.* (emphasis added). We therefore must proceed to a second threshold question, which is whether the conduct alleged as to Officer Luffi individually and Officer Perez individually established a seizure in violation of the Fourth Amendment. And because qualified immunity has been asserted, the claims against Officer Luffi or Officer Perez may proceed only if liability is placed beyond debate based on clearly established law.

The district court found that a "causal connection" shown by "some participation" between Appellants' actions and Gallego's seizure was all that was required to reject the qualified immunity defense. R.72 at 35:1-37:6. But even if the Court were to find that the first qualified immunity prong presents a close call (in other words, that the district court's "participation" analysis was arguably correct), Appellants still win on prong two because the district court's reliance on general proposition of law to abrogate qualified immunity was inarguably incorrect. This presents the very type of case for the Court to exercise its discretion to bypass the first qualified immunity prong because prong two is far easier to resolve.

1. **General Fourth Amendment / *Terry* Stop Principles Do Not Draw a Bright Line Clearly Establishing that Officer Luffi and Perez's Actions Were Tantamount to Ordering or Authorizing Gallego's Detention**

"Violation of the Fourth Amendment requires an intentional acquisition of physical control." *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). "[A] Fourth Amendment seizure does not occur whenever there is a governmentally caused

termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied.*" *Id.* at 596-97. It is only an officer's "intervention directed at a specific individual that furnishes the basis for a Fourth Amendment claim." *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1166–67 (11th Cir. 2005).

As the Supreme Court just recently reiterated, "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain, for we rarely probe the subjective motivations of police officers in the Fourth Amendment context." *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021) (citing *Nieves v. Bartlett*, 139 S.Ct. 1715, 1724-25 (2019)). Only an objective test is consistent with the principles of qualified immunity in allowing "the police to determine in advance whether the conduct contemplated will implicate the Fourth Amendment." *Torres*, 141 S. Ct. at 998 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988)). The seizure does not "depend on the subjective perceptions of the seized person." *Torres*, 141 S. Ct. at 999; *cf. Brown*, 608 F.3d at 737 ("an officer's subjective intent is irrelevant in a qualified immunity analysis").

Factors relevant to whether a seizure has occurred include "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age,

education and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect, and the language and tone of voice of the police." *Perez*, 443 F.3d at 778. Notably, "the simple act of police questioning does not constitute a seizure." *Id.* at 778. And the presence of one or more of the above factors does not automatically mean that a seizure occurred. *See United States v. De La Rosa*, 922 F.2d 675, 678 (11th Cir. 1991) (subject was not seized and was free to leave even though his license was retained).

These general propositions cannot clearly establish a constitutional violation here. Gallego has not alleged facts that Officers Perez or Luffi seized her through means intentionally applied. *Brower*, 489 U.S. at 596-97. There are no allegations that either Luffi or Perez blocked or impeded Gallego's path or retained her identification. *Perez*, 443 F.3d at 778 (finding no seizure and noting that "at no point did Lt. Gonzalez block Valdez's truck or otherwise obstruct Perez, Valdez, or the others' exit from the area."). Likewise, there are no allegations that Luffi or Perez displayed weapons, physically restrained, or gave Gallego commands. Nor did they give commands to any other officer to restrain or detain Gallego. As for Gallego's age, education and intelligence, she alleges that she is a community association President and Treasurer and was represented by an attorney, all of which tends to demonstrate sophistication. R.46 ¶¶ 17, 80.

Neither Perez nor Luffi are alleged to have commanded or authorized Officer Escobar or Officer Garcia to restrain Gallego. Nothing in this Court's prior caselaw compels the conclusion to every reasonable officer that stating "I can't wait to put you in a chair and ask you questions" is tantamount to an order or command to seize or detain making the officer liability for any subsequent detention. Likewise, prior precedents do not compel the conclusion that flashing handcuffs is tantamount to a command or order to prolong a detention. Qualified immunity therefore applies.

a. <u>Officer Perez</u>

Gallego alleged, and the district court found, that Gallego stated a Fourth Amendment claim against Officer Perez because she said: "I can't wait to put you in a chair and ask you questions." R.72 at 36:21-37:37:6. There is no clearly established law that such a statement gives rise to a Fourth Amendment violation. To begin, that statement does not manifest an *objective* intent to restrain such that another reasonable police officer would necessarily interpret that statement to command Gallego's immediate apprehension. *Torres*, 141 S. Ct. at 998. It is at best a statement of subjective desire, which is not relevant to the qualified immunity analysis under the Fourth Amendment. Moreover, even if one could construe that statement to manifest an intent to restrain, that conclusion does not flow from clearly established law in this jurisdiction. There is no binding caselaw that a statement reflecting a subjective desire in the manner alleged by Officer Perez could make the

speaking officer liable as a participant to a later unlawful detention.

Equating an ambiguous and conditional statement "I can't wait to put you in a chair and ask you questions," with a directive to a fellow officer to detain a subject is the type of subjective mindreading that is inconsistent with the objective inquiry that governs Fourth Amendment claims. *Torres*, 141 S. Ct. at 998. Simply put, no clearly established law in this Circuit put Officer Perez on notice that she would be civilly liable for expressing her wishes if and when another officer took it upon himself to fulfill those wishes.

## b. Officer Luffi

The district court found that Officer Luffi could be liable because after telling Officer Garcia that he was going to arrest Gallego, and after Officer Garcia himself detained Gallego, Officer Luffi periodically raised his shirt to show his handcuffs. R.72 at 36:16-20. The district court highlighted the allegation that Luffi and Perez told Garcia that they were going to arrest Gallego, and Luffi's unfulfilled requests for the election ballot box, as somehow showing that he participated in Gallego's detention. *Id.* 35:2-21. But none of these allegations constitute an objective signal to detain Gallego and the district court did not cite any clearly established law that they did. Rather than rigorously consider the two criteria required by qualified immunity jurisprudence—whether the officer's conduct manifests an objective intent to restrain and whether that objective conduct has been proscribed by clearly

established law—the district court appears to have improperly collapsed the entire inquiry in whether there was "some participation" to establish a "causal connection." *Id.* at 36:20, 37:5-6, 38:11. But that finding only answers the first qualified immunity question that a constitutional violation was alleged; it does not resolve whether such violation was clearly established.

Neither Officer Luffi's statements to Officer Garcia prior to the meeting, nor his attempt to inspect the ballot box, would objectively authorize Gallego's detention. (According to the SAC, Officer Escobar did that immediately following *Officer Perez's* comments, not anything Officer Luffi said or did). No controlling case says these are the kinds of actions that a reasonable officer should know amount to participation in an unlawful detention. Flashing handcuffs is not an established, objective signal to persist in a detention under the law of this jurisdiction. Certainly, neither Gallego nor the district court have cited any authority that it was.

\* \* \*

In sum, no controlling precedent makes it obvious that stating "I can't wait to put you in a chair and ask you questions" or flashing handcuffs while an individual has already been detained constitute participation in the detention of a subject by another officer. They may be inappropriate or even disrespectful comments and gestures, but the standard is clearly established law, not moral blameworthiness. *See, e.g.*, *Echols*, 913 F.3d at 1325.

**2. Preexisting Caselaw Supports that Equivocal Statements and Gestures Do Not Create Fourth Amendment Liability**

This Court has considered whether verbal cues and gestures that fall short of a clear command can cause a Fourth Amendment liability. In *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), the officer told the subject to remove her jacket and that if she refused "her choices were to allow him to look under her clothes, to leave the courthouse or to be arrested." *Id.* at 1066. He then "reached toward his waist belt and behind his back in the vicinity of his handcuffs, all the while glaring at her." *Id.* But the Court found that this conduct was "irrelevant" to the question of whether a seizure occurred, which happened only once the officer exercised *physical control* of the plaintiff:

> West was not seized while she was disputing Davis' request for her to remove her suit jacket. ***What happened before Davis grabbed West's hand . . . is irrelevant to the question of whether Davis seized West at the moment that he physically grabbed her hand. At that moment, if West is to be believed, she was seized.***

*Id.* at 1070-71 (emphasis added). In view of *West*, a reasonable officer could believe that more was required to authorize Gallego's detention than what is alleged against Officer Perez and Officer Luffi before they can be liable for an unlawful detention.

In concluding that the plaintiff was seized, *West* specifically cited the ***physical force*** applied:

> Davis . . . intentionally restrained her liberty of movement by physical force ***when he*** grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was

applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter . . .

*West*, 767 F.3d at 1070 (emphasis added). A reasonable officer could also read *West* for the proposition that flashing handcuffs and making statements such as "I am going to be able to sit down and ask you questions" does not constitute a seizure because *West* found that a seizure occurred only after the officer physically grabbed the subject. 767 F.3d at 1070-71. There are no allegations that either Luffi or Perez ever applied physical force to Gallego or told anyone else to.

Similarly, this Circuit found an officer's statement that "I will do more than help you get up" sufficiently ambiguous as not to establish a duty to intervene in a later use of force, finding that "[r]easonable officers would not necessarily" interpret this statement to presage an assault. *See Militello v. Sheriff of Broward Sheriff's Office*, 684 F. Appx. 809, 811, 815 (11th Cir. 2017). So both *West* and *Militello* can be read to support the notion that conditional or ambiguous statements and gestures do not lead to Fourth Amendment liability.

When a reasonable construction of prior caselaw would support that an officer's actions did ***not*** violate the plaintiff's rights, qualified immunity applies. *See Merricks*, 785 F.3d at 564 (office court not liable for excessive force claim when reasonable construction of prior caselaw could be read to permit the force in question). Here, a reasonable officer could read *West* to support the contention that what Officer Perez and Officer Luffi did and said did not constitute a Fourth

31

Amendment violation. Consequently, the qualified immunity inquiry should end here because the law was not clearly established that Officer Perez's or Officer Luffi's actions could make them liable for a claim that they participated in Gallego's alleged seizure.

### 3. *Jones v. Cannon* Does Not Compel Fourth Amendment Liability on the Factual Circumstances Alleged Here

*Jones* is the one precedent identified in this Circuit to hold that a non-arresting officer participating in an arrest also bears liability. But its facts bear scant resemblance to those here. In *Jones*, two detectives, Powers and Bishop, were investigating a homicide. *Id.* at 1277. Powers told Jones, the plaintiff, that he was taking him to the station as a suspect. *Id.* Bishop accompanied Jones to the station and stayed with him while Powers interviewed him. The detectives claimed that during the interview Jones confessed to the murder, but Jones denied this. *Id.* Powers told Jones he was under arrest and solely authored the arrest affidavit which stated that Jones confessed to the murder. *Id.* at 1278-79.

### a. *Jones's* First Holding Pertained to a "Non-Arresting" Officer Who Jointly Participated in Practically Every Aspect of the Plaintiff's Initial Detention With the Arresting Officer

Because Powers told Jones that he was under arrest and prepared the arrest affidavit, the Court separately analyzed whether liability for a false arrest could also inure to the non-arresting officer, Detective Bishop. *Id.* at 1284. The Court found

that it could because (1) Bishop alone stayed with Jones while Powers called the state attorney's office, (2) Bishop was present during the entire interview (and would therefore have known that Jones did not confess), (3) Bishop took notes of the interview which Powers relied upon for the arrest affidavit, and (4) "more importantly," the Court emphasized, Powers and Bishop transported Jones to the jail together. *Id.*

The most straight-forward reading of *Jones* is that Officer Bishop, who knew Jones did not confess, shared liability for the initial detention because he directly participated in all parts of the plaintiff's detention. That is in fact how the Court interpreted *Jones* when it examined it in *Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013). *Wilkerson* explained that liability in *Jones* flowed from the fact that the non-arresting officer "participated in an interview resulting in an allegedly fabricated confession, took notes from which the police report was prepared, and transported the detainee to the jail." *Wilkerson*, 736 F.3d at 979. The addition of *Wilkerson* to the "legal landscape," and its recitation of the holding in *Jones*, further undermines the application of *Jones* to the qualified immunity analysis here since Appellants did not do any, much less all, of things the Court looked to in finding the non-arresting officer in *Jones* equally liable.

The conclusion that Officer Perez or Officer Luffi share liability for Gallego's detention does not "follow immediately" from *Jones*. Unlike Jones, Gallego was not

taken to jail, booked, transported to the police station, or even removed from the HOA clubhouse. Moreover, neither Luffi nor Perez ever assumed custody of Gallego, much less became the only officer or officers with custody over her. In short, the prolonged *Terry* stop Gallego alleges here bears little similarity to what occurred in *Jones*, where the suspect was held at the police station and then transported to jail by two officers. Officer Luffi and Perez's relevant conduct is not so obviously indistinguishable from Officer Bishop's that *Jones* "truly compels" the same outcome here. *Wade*, 14 F.4d at 1225.

It is also crucial to note that *Jones* involved a custodial arrest and booking into jail, not a *Terry* stop, as Gallego has alleged here, which detracts from its ability to provide the type of clear notice the qualified immunity requires. The Court has clearly distinguished between claims of false arrest and *Terry* stops in the qualified immunity context before. In *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015), the Court found that a warrantless ***Terry* stop** inside the home could not be conducted absent exigent circumstances but still granted qualified immunity to the officers because the law was not clearly established. The Court had held eight years earlier in *McClish v. Nugent*, 483 F.3d 1231 (11th Cir. 2007), that a warrantless ***arrest*** could not be conducted inside the home absent exigent circumstances, but for purposes of qualified immunity, *Moore* did not consider it obvious that any officer would read *McClish* to apply to *Terry* stops as well.

Similarly with *Jones*, a reasonable officer could read that case to apply to situations attributing responsibility for a joint arrest where a suspect is removed to the police station and then booked into jail, while saying nothing about what exposes an officer to liability for a *Terry* stop or detention conducted by another officer. Stated otherwise, every reasonable officer would not be *compelled* to find that Office Luffi or Officer Perez's conduct *obviously* makes them liable for Gallego's temporary detention based on *Jones*. When, as here, the "factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case" qualified immunity must be granted. *Jones v. Fransen*, 857 F.3d 843, 852 (11th Cir. 2017).

> **b. *Jones's* Second Holding Limited the Non-Arresting Officer's Liability Because a Finding of Liability Would Have Imposed a Duty to Intervene**

*Jones* separately considered whether Officer Bishop could be liable for the continued unlawful arrest of the plaintiff following the initial arrest. Specifically, the Court separately examined Officer Bishop's liability for Jones's continued detention following the probable cause hearing and found that he was immune. *Jones*, 174 F.3d at 1284-86. The Court held that no binding precedent as of 2009 had imposed a duty to intervene in an unlawful detention or, indeed, in any context outside of excessive force. *Id.* at 1286 ("There is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a

police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct.").

Because Officer Powers authored the arrest affidavit that was the basis for Jones's continued detention after the probable cause hearing, Officer Powers could alone be liable for any detention following the probable cause hearing. Any other holding would implicate a failure to intervene theory, which the Court rejected for claims of false arrest. *See id.* As of 2018, when the underlying detention here occurred, the relevant legal landscape had remained unchanged since 1999, and failure to intervene in this Circuit was then (and remains today) limited to excessive force cases. *Cf. Brown*, 608 F.3d at 737 (stating, in 2020 that "[m]erely being present with the arresting officers at the scene is not enough, unless the plaintiff can show that the defendant officer was part of the chain of command ***authorizing the arrest action***.") (emphasis added).[7]

---

[7] The reason why there is no duty to intervene into an alleged illegal detention is straightforward. Unlike excessive force, the consequences of which can be irremediable, unlawful detentions can be challenged and remedied through the judicial process and the cost of imposing a duty on law enforcement officers to reexamine the probable cause findings by fellow-officers is too high. *Stallworth v. Hurst*, 2:18-CV-1005-ALB-SRW, 2019 WL 5070196, at *2 (M.D. Ala. Oct. 8, 2019) (Brasher, J.) ("It is one thing to require a police officer to stop his partner from hitting someone with a baton. It is another to require that every officer on the street actively inquire as to the constitutional merits and predicate of each seizure by other officers, and then countermand seizures they believe are unreasonable. It would effectively conscript every police officer to play the role of internal affairs as well as peacekeeper."). Plaintiff has disclaimed any notion that she is proceeding on a

In abrogating qualified immunity, the district court appears to have focused on *Jones*'s first holding but the second is arguably the better fit. Officer Bishop was present during the entire interrogation where Jones did not confess, and Officer Powers relied upon Officer Bishop's interview notes to prepare the arrest affidavit. *Id.* at 1283-84. Officer Bishop jointly investigated the homicide with Officer Power from the beginning. *Id.* at 1277-78. Yet despite Officer Bishop's full knowledge that there was no legal basis for the arrest, the Court immunized him for any seizure following the probable cause hearing simply because he did not author the arrest affidavit. "At a minimum," the Court explained "Jones has not shown that Bishop's failing to intervene to stop Powers's conduct violates any clearly established right of which a reasonable police officer would have known." *Id.* at 1286.

Reading *Jones*'s dual holdings in tandem requires, at a minimum, the recognition that the holding finding liability for the non-arresting officer is fairly

---

failure to intervene theory, and we take her at her word. *See* R.29 at 14 ("Ms. Gallego is not asserting that Perez and Luffi failed to intervene in her illegal detention. Instead, Ms. Gallego asserts that Perez and Luffi *caused, instigated or participated* in her illegal detention."). Indeed, courts have granted qualified immunity on the basis that there is no clearly established duty to intervene outside the excessive force context. *See, e.g.*, *Rance v. Bradshaw*, 15-CV-81210-KAM, 2016 WL 3199002, at *9 (S.D. Fla. June 9, 2016); *Tarantino v. Citrus County Gov't*, 5:12-CV-434-OC-32PRL, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014). So Officers Perez and Luffi cannot be sued for being present during a detention because such a claim is contrary to the clearly established law in this Circuit even if they knew probable cause was lacking.

distinguishable and the holding finding no liability for the non-arresting officer is arguable applicable. The upshot is that the conclusion that Appellants are necessarily liable does not follow immediately from *Jones*; every reasonable officer would not read *Jones* to compel the conclusion that Officer Luffi or Officer Perez's conduct made them liable for a Fourth Amendment violation on the facts alleged here.

### 4. Dictum in *Jordan v. Mosley* Cannot Clearly Establish the Law

The second case that the district court relied upon was *Jordan*, which in dictum stated that "a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment." 487 F.3d at 1354; R.72 at 36:11. *Jordan* does not change the analysis because the issue of the officer's involvement ("instigat[ing] or caus[ing] an unlawful arrest") was irrelevant to *Jordan*'s actual holding, which was that qualified immunity applied because probable cause existed. 487 F.3d at 1356-57. The passage in *Jordan* regarding liability for a non-arresting officer is clearly dicta because it was in no way essential to the holding of the case that the claim was barred by probable cause. *See Hamilton By & Through Hamilton v. Cannon*, 80 F.3d 1525, 1530 (11th Cir. 1996). "Dicta is particularly unhelpful in qualified immunity cases where we seek to identify clearly established law." *Id.* That is because "[q]ualified immunity focuses on the actual, specific details of concrete cases." *Moore*, 806 F.3d at 1057; *Jones*, 174 F.3d at 1283.

But more importantly, the principle articulated by the district court that a non-

arresting officer can be liable if he is a "participant in the arrest," R.72 at 36:12, simply begs the factual question, on concededly "novel facts," whether the conduct alleged here constituted sufficient participation to begin with. This is the very type of general proposition of law that adds nothing to the "clearly established" analysis. *See, e.g.*, *City of Escondido*, 139 S. Ct. at 503 (explaining that clearly established law is determined with reference to the facts confronting the officer not the general legal theory espouse to establish liability).

*    *    *

Neither *Jones* nor *Jordan* **compels** the conclusion that Officer Perez or Officer Luffi violated the Fourth Amendment, which means that qualified immunity should have been granted. The citation to *Jordan* demonstrates that the district court erred in finding Gallego discharged her burden to abrogate an officer's entitlement to qualified immunity by referring to general rules and abstract rights. *Moore*, 806 F.3d at 1057 ("Plaintiffs may not discharge their burden by referring to general rules and abstract rights.").

## Conclusion

The relevant legal landscape on March 6, 2018 did not compel the conclusion that Appellants violated clearly established law making them individually liable for Gallego's alleged detention. The district court's order denying Officers Luffi and Perez's motion to dismiss should be reversed and Counts I and II should be dismissed based on qualified immunity.

DATE: January 19, 2022.                    Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: /s/ Ezra S. Greenberg
Ezra S. Greenberg
Florida Bar No. 85018
Assistant County Attorney
Email: ezrag@miamidade.gov
Phone: (305) 375-5151
Attorney for Defendants/Appellants
Carlos Luffi and Ivette Perez

## Certificate Of Compliance

**1.** This document complies with the word limit of **Fed. R. App. P 32(a)(7)(B)(i)** because, excluding the parts of the document exempted by FRAP 32(f), this document contains **9,956** words.

**2.** This document complies with the typeface requirements of FRAP 32(a)(5) and the type-style requirements of FRAP 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2110 in Size 14, Times New Roman type style.

/s/ Ezra S. Greenberg
Assistant County Attorney

## Certificate Of Service

I certify that on **January 19, 2021**, this document was served on all counsel of record via Appellate ECF and that **four** copies were mailed to the Clerk, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303, via U.S. Mail first-class.

/s/ Ezra S. Greenberg
Assistant County Attorney