# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

_____

No. 21-13212-HH
_____

IVETTE PEREZ and CARLOS LUFFI,

Defendant/Appellants,

-vs-

MARGLLI GALLEGO,

Plaintiff/Appellee.

_____

On Interlocutory Appeal from the
United States District Court, Southern District of Florida
Case No.  20-cv-24374-BB

_____

## APPELLEE'S BRIEF


_____

Hilton Napoleon, II, Esq.
hnapoleon@rascoklock.com
RASCO KLOCK PEREZ NIETO, P.L.
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, FL 33134
Phone: (305) 476-7100
Fax: (305) 476-7102


*Attorneys for Plaintiff/Appellee*
*Marglli Gallego*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1. 25.1-2, and 26.1-3, Appellee Marglli Gallego certifiesto the best of her knowledge and belief,  that the following persons and entities may have an interest in the outcome of this case:

Beth Bloom, United States District Judge

Geraldine Bonzon-Keenan Miami-Dade County Attorney

Marglli Gallego, Appellee

Ezra Greenberg, Counsel of Record for Appellants

Carlos Luffi, Defendant/Appellant

Miami-Dade County

Miami-Dade County Attorney's Office

Hilton Napoleon, Attorney for Appellee

Alicia M. Otazo-Reyes, United States Magistrate Judge

Bernard Pastor, Assistant County Attorney

Ivette Perez, Defendant/Appellant

Oren Rosenthal, Assistant County Attorney

Rachel Walters, Assistant County Attorney

## CORPORATE DISCLOSURE STATEMENT

Not applicable.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Federal Rule of Appellate Procedure 34(a), Plaintiff-Appellee hereby respectfully request oral argument on the present appeal. This appeal raises important issues regarding whether officers who have instigated, encouraged, incited, caused or participated in an illegal detention are entitled to qualified immunity.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... ii

TABLE OF CONTENTS............................................................................................ iii

TABLE OF CITATIONS ......................................................................................... iv

STATEMENT OF THE ISSUES............................................................................1

STATEMENT OF THE CASE...............................................................................2

   Background ....................................................................................2

   Facts Giving Rise to the Claims......................................................3

   Additional Facts ...........................................................................9

   Motion to Dismiss.......................................................................10

   The District Court Properly Denied Qualified Immunity .............11

STANDARD OF REVIEW ....................................................................................13

SUMMARY OF THE ARGUMENT .....................................................................15

ARGUMENT ...........................................................................................................17

 I. Officer Perez and Luffi are not entitled to Qualified Immunity.............17

  A. Standard for Qualified Immunity. ...................................................17

  B. Ms. Gallego proved that she suffered a constitutional violation ......19

  C. The Constitutional Violation was Clearly Established ....................25

 II. Officer Who *Instigate* or *Participate* Unlawful Seizures Are Not Entitled to Immunity.......................................................................................32

CONCLUSION ........................................................................................................37

CERTIFICATE OF FONT COMPLIANCE ..........................................................38

CERTIFICATE OF SERVICE ...............................................................................38

# TABLE OF CITATIONS

Cases

*Ancata v. Prison Health Servs., Inc.,*
  769 F.2d 700 (11th Cir. 1985) ............................................................................14

*Anderson v. Creighton,*
  483 U.S. 635 (1987) ............................................................................18

*Ashcroft v. al-Kidd,*
  563 U.S. 731 (2011) ............................................................................18

*California v. Hodari,*
  499 U.S. 621 ............................................................................ 20, 21

*Childs v. Dekalb Cty., Ga.,*
  286 F. App'x 687 (11th Cir. 2008) ............................................................ 25, 28

*Conley v. Gibson,*
  355 U.S. 41 (1957) ............................................................................13

*Cooper v. Rutherford,*
  2012 WL 4856122 (11th Cir. 2012) ....................................................................29

*Corbett v. Hickers,*
  929 F.3d 1304 (11th Cir. 2019) ............................................................................14

*Courson v. McMillian,*
  939 F.2d 1479 (11th Cir. 1991) ............................................................................17

*D.C. v. Wesby,*
  138 S. Ct. 577 (2018) ........................................................... 21, 29, 32

*Dukes v. Miami-Dade Cty.,*
  232 F. App'x 907 (11th Cir. 2007) ....................................................................18

*Dunaway v. New York,*
  442 U.S. 200 (1979) ............................................................................19

*FindWhat Inv'r Grp. v. FindWhat.com,*
  658 F.3d 1282 (11th Cir. 2011) ............................................................................13

*Grayden v. Rhodes*,
   345 F.3d 1225 (11th Cir. 2003) .............................................. 18, 27, 31

*Grossman v. Nationsbank, N.A.*,
   225 F. 3d 1225 (11th Cir. 2000) ..........................................14

*Hardigree v. Lofton*,
   992 F.3d 1216 (11th Cir. 2021) .............................................. 18, 31

*Harlow v. Fitzgerald*,
   457 U.S. 800 (1982) ........................................17

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ........................................13

*Holloman ex rel. Holloman v. Harland*,
   *370 F.3d 1252 (11th Cir. 2004)*..........................................18

Hope *v. Pelzer*,
   536 U.S. 730 (2002) .......................................... 18, 31

*Johnson v. City of Shelby, Miss.*,
   135 S. Ct. 346 (2014)..........................................13

*Jones v. Cannon*,
   174 F.3d 1271 (11th Cir. 1999) .............................................. 33, 34, 36

*Jordan v. Mosley*,
   487 F.3d 1350 (11th Cir. 2007) .............................................. 11, 15, 33, 36

*Kingsland v. City of Miami*,
   382 F.3d 1220 (11th Cir. 2004) .............................................. 25, 29

*Marx v. Gumbinner*,
   905 F.2d 1503 (11th Cir. 1990) .............................................. 25, 29

*McDonough v. Mata*,
   No. 19-cv-21986-Moreno, 2020 WL 7350267 (S.D. Fla. Sept. 28, 2020) ... 35, 36

*Militello v. Sheriff of Broward Sheriff's Office*,
   684 F. Appx. 809 (11th Cir. 2017) ..........................................30

*Mowell v. City of Milton, Georgia*,
   810 F. App'x 799 (11th Cir. 2020) ........................................................32

*O'Neill v. Krzeminski*,
   839 F.2d 9 (2d Cir.1988) ........................................................30

*Pearson v. Callahan*,
   555 U.S. 223 (2009) ........................................................17

*Redd v. City of Enterprise*,
   140 F.3d 1378 (11th Cir. 1998) .................................................. 25, 28

*Salvato v. Miley*,
   790 F. 3d 1286 (11th Cir. 2015) ................................................ 18, 28

*Skop v. City of Atlanta*,
   485 F.3d 1130 (11th Cir. 2007) ........................................................17

*Terry v. Ohio*,
   392 U.S. 1 (1968) ........................................................19

Thompson v. Whitman,
   85 U.S. (18 Wall.) 457, 21 L.Ed. 897 (1874) ......................................20

*Touzin v. Patriarca*,
   2013 WL 6051062 (S.D. Fla. November 14, 2013) ...........................21

*U.S. v. Baker*,
   290 F.3d 1276 (11th Cir. 2002) ........................................................21

*U.S. v. Mosquera-Ramirez*,
   729 F.2d 1352 (11th Cir. 1984) ........................................................24

*United States v. Brignoni–Ponce*,
   422 U.S. 873 (1975) ........................................................20

*United States v. De La Rosa*,
   922 F.2d 675 (11th Cir. 1991) ........................................................20

*United States v. House*,
   684 F.3d 1173 (11th Cir. 2012) ........................................................20

*United States v. Mendenhall*,
    446 U.S. 544 (1980) ......................................................................20

*United States v. Perez*,
    443 F.3d 772 (11th Cir. 2006) ....................................................20

*United States v. Perkins*,
    348 F.3d 965 (11th Cir. 2003) ....................................................19

*Valdes v. Miami-Dade Cty.*,
    584 F. App'x 927 (11th Cir. 2014) .............................................22

*Valdes v. Miami-Dade Cty.*,
    No. 12-22426-CIV, 2013 WL 5429938 (S.D. Fla. Sept. 27, 2013) ........ 13, 21, 22

*West v. Davis*,
    767 F.3d 1063 (11th Cir. 2014) ........................................ passim

*Wilkerson v. Seymour*,
    736 F.3d 874 (11th Cir. 2013) ........................................ 25, 29

*Wilkerson v. Seymour*,
    736 F.3d 974 (11th Cir. 2013) ........................................ passim

*Wright v. Newsome,*
    795 F.2d 964 (11th Cir. 1986) ....................................................13

Rules

Eleventh Circuit Rules 26.1-1 ........................................................ i

Federal Rule of Appellate Procedure 26.1 ...................................... i

Federal Rule of Appellate Procedure 34(a) .................................... ii

Federal Rule of Civil Procedure 8(a)(2) ........................................13

Federal Rule of Evidence 404(b) ....................................................9

Rule 32(a)(7) of the Federal Rules of Appellate Procedure ...................38

## STATEMENT OF THE ISSUES

Plaintiff/Appellee, Marglli Gallego ("Mrs. Gallego"), alleged that four Miami-Dade Police Officers – Ivette Perez, Carlos Luffi, Ricky Garcia, and Flavio Escobar – illegally seized her for over four hours in contravention of her Fourth Amendment right to be free from unreasonable seizures. Appellants, Perez and Luffi, concede that the operative complaint alleges that Garcia and Escobar violated her clearly established right to be free from illegal seizures, but claim that their individual conduct does not rise to the level of an constitutional violation. The issue present here is whether Perez and Luffi sufficiently *instigated, caused,* or *participated* in Mrs. Gallego's admittedly illegal detention?

**Background**

When this incident occurred, Mrs. Gallego was the President of the Board of Directors for the Hammocks Community Association, Inc. ("Hammocks").[2]  [R. 46, ¶ 17].  Officer Perez and Sergeant Luffi were assigned to the Miami-Dade Police Department Economic Crimes Unit.  *Id.* at ¶ 18.  Sergeant Luffi is Officer Perez's direct supervisor and has the authority to control her work duties.  *Id.* at ¶ 19.  For the past three to four years, Perez and Luffi have made false, malicious, bad-faith, and defamatory statements about Mrs. Gallego to other property owners, vendors, and contractors.  *Id.* at ¶ 20.

For instance, before the incident giving rise to this lawsuit occurred, Perez and Luffi told property owners, vendors and contractors that Mrs. Gallego is stealing money from the Hammocks and that she is going to jail.  *Id.* at ¶ 21.  Sergeant Luffi went so far as to confront a Hammocks contractor outside of a courthouse and

---

[1] The Appellants give a detailed recitation of the prior non-operative complaints and the lower court's rulings – none of which are relevant for purposes of this appeal.  As such, Mrs. Gallego will only recite the facts in the operative complaint, *i.e.* the Second Amended Complaint, see R. 46, and the lower court's ruling on it. See R. 61, 72.

[2] The Hammocks is the largest homeowners association in Florida.  [D.E. 46, ¶8]. The Hammocks encompasses over 3,800 acres of land, waterways, and beaches in Southwest Miami-Dade County.  *Id.* at ¶ 9.  It has 6,537 residential units, including single-family homes, townhomes, and condominiums.  *Id.* at ¶ 10.  If the Hammocks were a city, its land area would be larger than Miami Shores, Key Biscayne, and El Portal ***combined***.  *Id.* at ¶ 11.

demanded that the contractor "say something" against Mrs. Gallego. *Id.* at ¶ 23. Luffi offered to "help him out" in return. *Id.* at ¶ 24. Luffi's heavy-handed invitation to "say something" against Mrs. Gallego was a bad-faith solicitation to falsely accuse her of a crime.[3] *Id.* at ¶ 25.

Perez and Luffi also falsely and maliciously told contractors and vendors of the Hammocks that Mrs. Gallego was involved in an illegal "kick-back" scheme and was going to jail. *Id.* at ¶ 28. Perez and Luffi threatened those same vendors with jail time unless they "cooperated" with them in their investigation against Mrs. Gallego. *Id.* at ¶ 29. Mrs. Gallego was aware of all of the malicious statements and actions by Perez and Luffi, as listed above. *Id.* at ¶ 30.

**Facts Giving Rise to the Claims**

On March 6, 2018, the Hammocks held an election for the Board of Directors. *Id.* at ¶ 32. The Hammocks hired Officer Garcia and Officer Escobar, both from the Miami-Dade Police Department, as "off-duty"[4] police officers. *Id.* at ¶ 33, 41. Since the election was not open to the public, the Hammocks informed Officer Garcia and Escobar to prevent anyone who is not a member of the association from entering the

---

[3] It is important to note that Sergeant Luffi knew that the contractor was represented by an attorney at the time, and that it was improper for him to confront a represented defendant outside of a courthouse and essentially offer him a quasi-cooperation agreement.

[4] The officers are not technically "off-duty." They are working in an overtime capacity, but are being paid by the Hammocks.

clubhouse. *Id.* at ¶ 41. They also provide general security for the election. *Id.* at ¶ 42-45.

At approximately 6:40 p.m., Officer Perez, Sergeant Luffi and an unknown police officer[5] parked directly in front of the Hammocks clubhouse in unmarked police vehicles. *Id.* at ¶ 46. All three officers were in plain clothes, but had their guns on their waists, and their badges hanging from their necks. *Id.* at ¶ 47. Perez, Luffi, and the unknown officer had a 10-15 minute conversation with Officer Garcia and Officer Escobar outside of the clubhouse. *Id.* at ¶ 48. During their conversation, Perez and Luffi told Officer Garcia that they were going to arrest Mrs. Gallego. *Id.* at ¶ 49. Officer Garcia later admitted on video that he believed Officer Perez and Sergeant Luffi showed up to arrest Mrs. Gallego. *Id.* at ¶ 50. Officer Garcia felt compelled[6] to allow Sergeant Luffi (a higher-ranking officer), Officer Perez, and the unknown officer to enter the Hammocks election, although they had no independent right to be present. *Id.* at ¶ 51.

Joel Mercado (a former corrections officer) was the property manager for the Hammocks at the time and noticed Perez, Luffi, and the unknown officer walk inside of the clubhouse. *Id.* at ¶ 53. Officers Garcia and Escobar also entered during this time, since the voting period had just ended. *Id.* at ¶ 55. Mr. Mercado immediately

---

[5] The "unknown officer" has since been identified as Detective Robert Phillips.
[6] Sergeant Luffi has supervisory control over Officer Garcia and Officer Escobar, even in their "off-duty" capacity.

approached Perez, Luffi, and the unknown officer and told them that the election was closed to the public and that they had to leave. *Id.* at ¶ 56, 57. Sergeant Luffi laughed at Mr. Mercado and stated in a condescending tone, "What are you going to do about it?" *Id.* at ¶ 58. Officers Garcia and Escobar heard Sergeant Luffi laugh and make the condescending statement. *Id.* at ¶ 59.

Perez, Luffi, and the unknown officer then walked over to the election ballot box and attempted to confiscate it. *Id.* at ¶ 60. Mr. Mercado told them that they could not take the closed, un-tabulated election ballots. *Id.* at ¶ 61. Mrs. Gallego, the President of the Hammocks at the time, also walked over and told Perez, Luffi, and the unknown officer that they were not allowed to be present and had to leave. *Id.* at ¶ 62. The three officers refused. *Id.* at ¶ 63. Officers Garcia and Escobar were in close proximity and overheard the entire conversation, but did not ask Perez and Luffi (a superior officer) to leave as the Hammock's personnel directed. *Id.* at ¶ 64, 65.

Perez and Luffi continuously demanded that Mr. Mercado and Mrs. Gallego allow them to take the ballots, but they refused the warrantless demand. *Id.* at ¶ 66, 67. Attorney Santiago Eljaiek, Esq. represented the Hammocks at the time and responded to the election site. *Id.* at ¶ 68. Mr. Eljaiek told Perez and Luffi that they could not remove the ballots without a warrant, as they did not have probable cause

to believe that a crime occurred, nor did they have a search warrant to confiscate the ballots. *Id.* at ¶ 69, 70.

Since the voting had concluded, the members of the association began to open and tabulate the votes.[7] *Id.* at ¶ 71. No outside individuals were allowed to be present during the counting process, only residents of the Hammocks and the staff. *Id.* at ¶ 73. Perez, Luffi, and the unknown officer hovered around the vote counting process. *Id.* at ¶ 74. They were told again to leave, but again refused. *Id.* at ¶ 75. Officers Garcia and Escobar were standing in close proximity and heard Perez and Luffi refuse to leave. *Id.* at ¶ 76.

Based on Perez and Luffi's history of malicious acts, their highly suspicious act of attempting to seize the ballot box without a warrant or probable cause, and their refusal to leave when told to do so, Mrs. Gallego told Sergeant Luffi that he must be a relative of someone who does not want her on the Board.[8] *Id.* at ¶ 77. Officer Perez immediately interjected and stated, "How do you know that? Why did

---

[7] This is a long and tedious process. Over 2,000 votes were cast and there were several people running for different seats on the Board. *Id.* at ¶ 72.

[8] It is important to note that, before the 2018 election, Sergeant Luffi had accompanied a Hammocks homeowner to the management office and threatened the management team if they did not provide the homeowner with the requested documents. Mrs. Gallego found it odd that a police sergeant would accompany a private citizen on an in-person document request to his homeowner's association. Moreover, Sergeant Luffi conversed and congregated with this very same homeowner during the 2018 election for an extended period of time. *Id.* at ¶ 77, fn 2.

you say that?" *Id.* at ¶ 78. Officer Perez told Mrs. Gallego something along the lines of, "I can't wait to put you in a chair and ask you questions." *Id.* at ¶ 79. Mrs. Gallego immediately responded, "I am represented by a lawyer, you can't do that."[9] *Id.* at ¶ 80. As Mrs. Gallego was saying, "you can't do that," Officer Garcia immediately pushed Mrs. Gallego away and told her to "sit down in this chair right now and don't move."[10] *Id.* at ¶ 81. Mrs. Gallego sat down in the chair as directed. *Id.* at ¶ 82. Officers Garcia and Escobar then sat down on chairs that were located on each side of Mrs. Gallego. *Id.* at ¶ 83. Officers Garcia and Escobar sat in very close proximity to Mrs. Gallego, essentially "sandwiching" her. *Id.* at ¶ 84.

While Mrs. Gallego was sandwiched between two officers, Sergeant Luffi repeatedly lifted up his untucked shirt and flashed his handcuffs in their direction. *Id.* at ¶ 95, 97. Officers Garcia and Escobar could clearly see their sergeant's actions. *Id.* at ¶ 96. Luffi's act confirmed what he had just told Officer Garcia outside of the clubhouse, *i.e.* that they planned to arrest Mrs. Gallego. A reasonable jury could easily infer that Sergeant Luffi's repeated flashing of his handcuffs was a

---

[9] By the time the 2018 election occurred, Officers Perez and Luffi had slandered, harassed, and threatened Mrs. Gallego for approximately two years, which caused Mrs. Gallego to hire a criminal defense attorney. Officer Perez and Luffi knew this fact because they had spoken to him on previous occasions. *Id.* at ¶ 80, fn 3.
[10] Officer Garica heard what Officer Perez said, *i.e.* "I can't wait to put you in a chair and ask you questions." A reasonable jury could infer that Perez's statement, along with their conversation outside confirming Ms. Gallego's supposed upcoming arrest clearly influenced Garcia's actions. *Id.* at ¶ 81.

signal to Officers Garcia and Escobar - both of whom are subordinate officers - to keep Mrs. Gallego detained.  *Id.* at ¶ 98.

Mrs. Gallego remained in the same chair for the entire counting process, which last approximately **four and ½ hours**.  *Id.* at ¶ 105.  Mrs. Gallego was not allowed to use the restroom, nor was she provided with food or water, even though she was the Board President.  *Id.* at ¶ 106.  During the four hour detention, Officer Perez came over multiple times and told Mrs. Gallego, "I'm am going to be able to ask you questions!" *Id.* at ¶ 107.

Mrs. Gallego was not ultimately allowed to get up until Sergeant Luffi and Officer Perez departed the premises, which was after the count had ended.  *Id.* at ¶ 109.  When Officer Perez and Sergeant Luffi finally exited the property, Officer Garcia shrugged his shoulders.  *Id.* at ¶ 110.  The look on Garcia's face indicated, "Oh well, I tried to help you."  *Id.* at ¶ 111.

Officers Garcia and Escobar were clearly not acting solely on their own volition.  *Id.* at ¶ 90.  Mrs. Gallego was the President of the Hammocks – the very same organization paying for Officer Garcia and Escobar's presence.  *Id.* at ¶ 91.  In fact, when this incident occurred, Officers Garcia and Escobar had already earned a significant amount of money by working at the Hammocks.  *Id.* at ¶ 92.  There is no way possible that Perez and Luffi's statements and actions, both inside and outside of the clubhouse, did not influence and encourage Officer Garcia and Escobar's

action of detaining the head of their off-duty employer. *Id.* at ¶ 93. Viewing the evidence in the light most favorable to Mrs. Gallego, Perez and Luffi's actions clearly *instigate, encourage, incite, cause, or participate* in her illegal detention.[11]

**Additional Facts**

On March 30, 2021, *while this litigation was pending*, Officer Perez obtained a warrant[12] to arrest Ms. Gallego. Ironically, the 2021 warrant was based on conduct that allegedly occurred in 2016-2017.[13] The Second Amended Complaint included a detailed section showing the frivolity of Perez's arrest warrant. R. 46 ¶¶ 118-181; R. 46-1 – 46-13. Perez's warrant was nothing more than an act of retaliation against Mrs. Gallego for filing the current civil rights lawsuit and a state-court defamation lawsuit against her and her sergeant. Mrs. Gallego argued that her 2021 arrest was relevant in this case under Federal Rule of Evidence 404(b) in order to prove Perez and Luffi's "absence of mistake or lack of accident." *See* Fed. R. Evid. 404(b). R. 44 at 3. More specifically, Mrs. Gallego argued that Perez's arrest warrant for incidents that allegedly took place back in 2016 and 2017 showed an "absence of

---

[11] There was absolutely no evidence whatsoever that anyone had tampered with the ballots, let alone Mrs. Gallego. *Id.* at ¶ 112. Mrs. Gallego never committed a crime, nor had she been accused of committing a crime. *Id.* at ¶ 113. In fact, none of the officers involved even alleged that election fraud had occurred or was occurring. *Id.* at ¶ 114.

[12] The warrant alleged one count of grand theft in the second degree and one count of organized scheme to defraud. R.40-1.

[13] Such a delayed filing is extremely rare in state court.

mistake" during the March 6, 2018 election detention. Mrs. Gallego argued that Perez and Luffi's "bystander defense" is nonsensical.

**Motion to Dismiss**

Appellants filed a motion to dismiss the operative complaint on June 11, 2021. Their argument relied heavily upon the fact that they never "instructed," "directed," "requested," or "commanded" Officer Garcia or Officer Escobar to illegally detain Ms. Gallego in a chair for four and a half hours. See [D.E 53, pg. 6]. However, Perez and Luffi clearly misidentify the legal issue in this case. The issue here is not whether Perez and Luffi *commanded* or *ordered* Ms. Gallego's illegal detention, but whether they *instigated, encouraged, incited, caused, or participated* in her illegal detention.

On appeal, the Perez and Luffi also argued that Mrs. Gallego "apparently conced[ed] that all the new allegation regarding the post-incident arrest had no legal relevance to whether Perez and Luffi have qualified immunity." See Appellant Brief at pg. 25. The Appellants argument is misplaced. During the hearing on the motion to dismiss, the lower court asked Mrs. Gallego's counsel, "You've set forth the history of these alleged malicious acts and the animus between Ms. Gallego and Officers Luffi and Perez, but how are they relevant to whether Ms. Gallego was actually seized? Shouldn't the court look to the March 6th encounter?" Mrs. Gallego's counsel answered:

No, Your Honor…. To look at this in a bubble, to only look at this on a date of incident is contrary to what the Eleventh Circuit says that you can do. You can take into consideration the prior incidents. You can take into consideration that Perez and Luffi literally told the entire association they were going to arrest Ms. Gallego. So it's almost disingenuous for them to claim that, ah, we didn't have anything to do with that … we were just running around telling everyone that we were going to do it, and then all of a sudden we convinced [Garcia and Escobar] to do it, and it's their fault, not ours. That's a disingenuous argument because they know that they have been saying this for quite a long time. And then now that they go and finally do it, it's even more evidence that this wasn't some type of mistake, they were clearly participating in this, and they proved it because Ms. Gallego was later arrested, just like they said they were going to do. So, for now, for them to say, oh, well, we weren't participating in that, that just was a happenstance, is disingenuous.

R. 72, pg. 22 line 19 – pg. 25, line 5.


**The District Court Properly Denied Qualified Immunity**

The district court heard the motion to dismiss the Second Amended Complain on August 23, 2021. Following binding case law in this Circuit, the district court properly concluded that Officers Perez and Luffi violated clearly established law. R. 72 at 36:9-15. *See Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999). *See also Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007). As acknowledged by the district court, *Jones* and *Jordan* established that "a participant in an arrest, even if not the arresting officer, may be liable if the officer knew the arrest lacked any constitutional basis and participated in some way." *Id.*

In examining the allegations of the Second Amended Complaint, the district court found that Officer Luffi participated in Ms. Gallego's detention because he told Officer Garcia that he was going to arrest Ms. Gallego, he was admitted to the clubhouse by Officer Garcia, made an unsuccessful attempt to take the ballot box, and then, after Ms. Gallego was detained, flashed his handcuffs several times. *Id.* at 35:2-21. According to the district court, Luffi confirmed that he was going to arrest Ms. Gallego when he flashed his handcuffs in the direction of Officers Garcia and Escobar. *Id.* at 35:22-25; R. 46. ¶¶ 101-107.

Similarly, the district court cited to Officer Perez's statement "I can't wait to put you in a chair and ask you questions," and the fact that Ms. Gallego was then placed in the chair after that statement was made. R.72 at 36:21-37:6. The court found that these allegations provided sufficient factual basis to support that Perez participated in the detention.

Accordingly, the district entered a paperless minute the same day "for the reasons stated on the record." R. 61. Officers Luffi and Perez timely appealed. R. 65.

## STANDARD OF REVIEW

As a preliminary matter, Federal Rule of Civil Procedure 8(a)(2) only calls for a "short plain statement of the claims showing that the pleader is entitled to relief." *See Johnson v. City of Shelby, Miss.,* 135 S. Ct. 346 (2014). A motion to dismiss is inappropriate unless the defendant can demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957)).

For the purposes of a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and all facts alleged by the plaintiff are accepted as true. *See Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984). Furthermore, ***all inferences*** must be viewed in the light most favorable to the plaintiff. *See FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) ("all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."); *Valdes v. Miami-Dade Cty*., No. 12-22426-CIV, 2013 WL 5429938 *18 (S.D. Fla. Sept. 27, 2013) (Moreno, C.J. / Otazo-Reyes, M.J.), *aff'd*, 584 F. App'x 927 (11th Cir. 2014) ("[I]n order to make the determination that Miami–Dade County is asking for, the undersigned would have to make inferences in its favor, rather than construing [the allegations] in the light most favorable to the plaintiff," which is improper.).

Overall, the threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir. 1985).

A motion to dismiss in a civil rights case must be denied where the complaint alleges a violation of a clearly established constitutional right. *See Corbett v. Hickers,* 929 F.3d 1304, 1311 (11th Cir. 2019). A complaint cannot be dismissed pursuant to Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Grossman v. Nationsbank, N.A.*, 225 F. 3d 1225, 1228 (11th Cir. 2000). Whether or not the constitutional right was clearly established is a question of law reviewed "de novo, accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* at 1311.

## SUMMARY OF THE ARGUMENT

In section 1983 cases, the Supreme Court directed lower courts to determine two issues as it relates to qualified immunity: (1) whether the plaintiff alleged a violation of his/her constitutional right; and (2) whether that constitutional right was clearly established at the time of the incident. Here, Perez and Luffi concede that Mrs. Gallego properly alleged a violation of her clearly established Fourth Amendment right to be free from unlawful seizures, as it relates to Garcia and Escobar. However, Perez and Luffi claim that they are entitled to qualified immunity because there is no case law "saying that the type of offhand comments and gestures alleged" against them can result in liability. Regardless of how Perez and Luffi couch the issues in their Brief, they are essentially arguing that they did not sufficiently participate in the March 2018 detention.

When an non-arresting officer denies liability for a constitutional violation committed by another officers, this Circuit requires lower courts to determine whether the officer sufficiently *instigated* or *participated* in the constitutional violation. *See Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) ("In this Circuit, a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment."); *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) ("What is made explicit in *Jones* is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any

constitutional basis and yet participated in some way.").  Here, Perez and Luffi sufficiently instigated and participated in Ms. Gallego's illegal detention by, *inter alia*, telling Garcia that they were present to arrest Mrs. Gallego, confronting her in a place that they had no right to be, refusing to leave when told to do so, dangling handcuffs in front of her, and saying, "I can't wait to put you in chair and ask you questions."  Perez and Luffi are not absolved of liability simply because two other police officers are the ones who physically detained her. Perez and Luffi's claim is meritless.

**ARGUMENT**

**I.      Officer Perez and Luffi are not entitled to Qualified Immunity.**

**A.      Standard for Qualified Immunity.**

Perez and Luffi claim that they are entitled to qualified immunity.  Qualified immunity "shields government officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Courson v. McMillian*, 939 F.2d 1479, 1486 (11th Cir. 1991) (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). [A]rguable probable cause to arrest for *some* offense must exist in order for officers to assert qualified immunity. *Wilkerson v. Seymour,* 736 F.3d 974 (11th Cir. 2013).

A trial court must evaluate the defense of qualified immunity by a two-step process.  First, a government official asserting the defense of qualified immunity must initially establish that he was acting within his discretionary authority. *See Skop v. City of Atlanta,* 485 F.3d 1130 (11th Cir. 2007).  Next, if the official was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that the official is not entitled to qualified immunity.  *Id.*

To overcome a government official's qualified immunity defense, a plaintiff must show that: (1) the official's conduct violated a statutory or constitutional right; and (2) the violation of that right was "clearly established." *Pearson v. Callahan*,

555 U.S. 223, 236 (2009). The threshold question is whether the alleged facts demonstrate that the defendant violated any constitutional right of the plaintiff. *See Dukes v. Miami-Dade Cty*., 232 F. App'x 907, 911 (11th Cir. 2007). If a constitutional violation is properly alleged, the final step is to determine whether the right was clearly established. *Id.*

"A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). A clearly established right exists when "the state of the law gave the official fair warning that the alleged conduct was unconstitutional." *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021) (quoting Hope *v. Pelzer*, 536 U.S. 730, 740-741 (2002)); see also *Grayden v.* Rhodes, 345 F.3d 1225, 1232 (11th Cir. 2003). "There need not be a case on all fours with materially identical facts . . . so long as the prior decisions gave reasonable warning that the conduct at issue violated constitutional rights." *Salvato v. Miley,* 790 F. 3d 1286, 1294 (11th Cir. 2015)(citing *Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1277 (11th Cir. 2004)* (internal quotation marks and citation omitted); *see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("[O]fficials

can still be on notice that their conduct violates established law even in novel factual circumstances.").

### B. Ms. Gallego proved that she suffered a constitutional violation

Mrs. Gallego alleged in her Complaint that Perez and Luffi, along with Garcia and Escobar, illegally seized her for over four hours during the 2018 Hammocks's election in violation of the Fourth Amendment. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons ... against unreasonable ... seizures." U.S. Const. amend. IV. The Supreme Court held long ago that even a temporary detention is a seizure under the Fourth Amendment. *See Terry v. Ohio*, 392 U.S. 1, 88 (1968).

Fourth Amendment protections attach to any prolonged detention of a person, including arrests and investigatory detentions. *Se*e *Dunaway v. New York*, 442 U.S. 200, 214–15 (1979) ("Nothing is more clear than that the Fourth Amendment was meant to prevent wholesale intrusions upon the personal security of our citizenry, whether these intrusions be termed arrests or investigatory detentions."); see also *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). In fact, "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *West v. Davis*, 767 F.3d 1063, 1067–68 (11th Cir. 2014)(*Citing Terry*, 392 U.S. 1, 88). "The restraint on one's freedom of movement does not have to endure for any minimum time period before it becomes a seizure

for Fourth Amendment purposes." *Id*. at 1069.  According to the Supreme Court, "[t]he Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest." *United States v. Brignoni–Ponce,* 422 U.S. 873, 878 (1975).

A police officer does not have to use physical force to seize an individual.  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (A seizure occurs when "a reasonable person in the same situation would feel that he or she was not free to leave.").  Police officers may seize an individual by using "a show of authority."  *See California v. Hodari,* 499 U.S. 621, 626, n. 2 (1991); *United States v. House,* 684 F.3d 1173, 1199 (11th Cir. 2012).  Factors relevant to determine whether officers used a "show of authority" include, but are not limited to: whether a citizen's path is blocked or impeded; the length of detention; the threatening presence of several officers; the display of weapons; any physical touching of the person; and the language and tone of voice used by the police. *See United States v. De La Rosa,* 922 F.2d 675, 678 (11th Cir. 1991); *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006).  Because the Supreme Court has noted that "a seizure is a single act, and not a continuous fact," it follows that any single show of authority can be considered a seizure. *California v. Hodari D*., 499 U.S. at 625 (1991).(quoting *Thompson v. Whitman,* 85 U.S. (18 Wall.) 457, 471, 21 L.Ed. 897 (1874)).

Courts must examine the totality of circumstances to determine whether a Fourth Amendment seizure occurred. *D.C. v. Wesby*, 138 S. Ct. 577, 588 (2018)(the lower court erred in viewing "each fact in isolation, rather than as a factor in the totality of circumstances.") (internal citations omitted); *California v. Hodari D., 499 U.S. 621, 627 (1991).* "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *See U.S. v. Baker,* 290 F.3d 1276, 1278 (11th Cir. 2002). *See also Touzin v. Patriarca,* 2013 WL 6051062 (S.D. Fla. November 14, 2013).

The history between parties is also relevant regarding the totality of circumstances. *Valdes v. Miami-Dade Cty.*, No. 12-22426-CIV, 2013 WL 5429938, at *4 (S.D. Fla. Sept. 27, 2013), *aff'd*, 584 F. App'x 927 (11th Cir. 2014). In *Valdes*, the Plaintiff filed a § 1983 claim against several Miami-Dade police officers for violations that occurred on two separate occasions. *Id.* at *1. Before the second incident, the plaintiff filed an internal affairs complaint against two of the officers, including Martinez. *Id.* The Plaintiff alleged that the second incident (the false arrest) was because of his prior interactions and complaint against the officers. The district court specifically noted, "Martinez had a history with the Plaintiff, a history

which included an alleged beating and an internal affairs investigation initiated by Plaintiff." *Id*. at *4. The district court further stated:

> In light of the ***prior incident*** between the Plaintiff and Sergeant Martinez, and the ensuing Internal Affairs investigation, there is evidence in this case from which a jury could reasonably infer that Sergeant Martinez falsified information to ensure Plaintiff's arrest and to ***obtain revenge*** for Plaintiff's filing a complaint with Internal Affairs.

*Id*. at *6. (emphasis added). The district court clearly relied on the history between the parties in its ruling. The Eleventh Circuit affirmed the district court's ruling based "on the reasoning in the thorough Report and Recommendation by the magistrate judge … and the Order Adopting Magistrate's Report and Recommendation, issued by the district judge. *See Valdes v. Miami-Dade Cty.*, 584 F. App'x 927, 928 (11th Cir. 2014).

As described above, Perez and Luffi have publicly made false and defamatory statements against Ms. Gallego for over three years and have told several people in the community that she is going to jail. Ms. Gallego was undoubtedly aware of their statements. The harassment became so intense that Ms. Gallego hired a criminal defense attorney to represent her, although she had neither been arrested nor charged with a crime. Perez and Luffi even tried to get vendors and contractors to fraudulently "say something" about Ms. Gallego.

On March 6, 2018, the Hammocks Community Association held a private election for the Board of Directors. The election was not open to the public, and

only members of the association were allowed to be present. Perez and Luffi showed up to the election unannounced with their badges out and guns on their side. Perez and Luffi told Officer Garcia and Escobar that they (Perez and Luffi) intended to arrest Mrs. Gallego. When Perez and Luffi went inside, they ignored repeated directives to leave the premises. Luffi even told the Hammocks management in a condescending tone, "What are you going to do about it?" Without probable cause to believe that a crime occurred, and without the presence of a search warrant, Perez and Luffi told Mrs. Gallego and other board members that they intended to confiscate the election box. Mrs. Gallego told the Defendants not to touch the ballots.

Based on his history of malicious acts towards her, and the suspicious attempt to seize election ballots, Mrs. Gallego told Luffi that he must be related to someone who does not want her on the Board. Officer Perez responded, "How do you know that? Why did you say that?" Perez then told Mrs. Gallego something along the lines of "I can't wait to put you in a chair and ask you questions."

Officer Garcia, who was supposed to be working for the Hammocks, then pushed Mrs. Gallego away and told her to "sit down in this chair right now and don't move." Officer Garcia and Officer Escobar sat on each side of Ms. Gallego in close proximity, essentially sandwiching her. During this time, Luffi repeatedly lifted his shirt to flash his handcuffs at Ms. Gallego. Perez repeatedly stated, "I'm going to

be able to sit across from you and ask you questions." Although Mrs. Gallego was the President of the Board, and lawfully holding an election, she was forced to sit in a chair for four and a half hours without food, water, or restroom privileges. Again, the March 6, 2018 incident *and* the history of Perez and Luffi's actions are relevant to this inquiry. Otherwise, we would be viewing the facts in isolation, which is contrary to the precedent listed above.

Overall, Perez and Luffi's participation in the seizure Mrs. Gallego without probable cause or reasonable suspicion is a clear violation of the Fourth Amendment. Several acts recognized by the Eleventh Circuit support Mrs. Gallego's position. Ms. Gallego did not feel free to leave because of the "threatening presence" of four officers. Furthermore, the display of Luffi's handcuffs, the length of her four-hour long detention, and Perez's language all indicated that a reasonable person in Ms. Gallego's shoes would not feel free to leave. "Even if some detention is constitutionally reasonable under a given set of circumstances, the length of that detention can make the detention an unreasonable seizure, and therefore unconstitutional." *U.S. v. Mosquera-Ramirez*, 729 F.2d 1352, 1355 (11th Cir. 1984). Based on the totality of the circumstances, Perez and Luffi illegally detained Mrs. Gallego.

### C.    The Constitutional Violation was Clearly Established

The Eleventh Circuit has repeatedly held that a seizure without probable cause "clearly" violates the Constitution.  See  *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11th Cir. 1998)("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Childs v. Dekalb Cty., Ga*., 286 F. App'x 687, 695 (11th Cir. 2008)("It has been clearly established since the Supreme Court  decided *Terry* that an investigative stop – a seizure for Fourth Amendment purposes – performed without reasonable suspicion violates the Fourth Amendment."); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (a warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim) *citing Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Wilkerson v. Seymour*, 736 F.3d 874, 977 (11th Cir. 2013) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."). This principal has been established even in circumstances that fall short of a formal arrest.  *West v. Davis*, 767 F.3d 1063, 1068 (11th Cir. 2014) ("It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for [a] crime.") (internal citations omitted).

Nevertheless, Perez and Luffi argue that preexisting caselaw supports the fact that their equivocal statements and gestures do not create Fourth Amendment

liability.    Perez and Luffi support this claim by misinterpreting *West v. Davis*, 767

F.3d 1063 (11th Cir. 2014) to mean that physical force is the only way for an

officer's behavior to amount to a seizure.

In *West*, the plaintiff was an attorney who entered a courthouse to represent

her client.  *Id.* at 1066.  Davis, a police officer working a security detail, commanded

the plaintiff to remove her suit jacket before passing through the metal detector.  *Id.*

The plaintiff refused to do so because it would expose her undergarments.  *Id.*  The

plaintiff asked Davis to call his supervisor on several occasions, but Davis initially

ignored her.  *Id.*  Instead, Davis reached towards his handcuffs while staring at the

plaintiff and made statements suggesting that she could be arrested.  *Id.*  Davis

eventually called his supervisor, and the plaintiff called her husband to apprise him

of the situation.  *Id.*  Davis then ordered the plaintiff to "get off the phone."  *Id.*

Davis twisted the phone away from the plaintiff's hand (causing her injury) and then

threw the phone into her purse.  *Id.*  Davis's supervisor arrived and told the plaintiff

that she did not have to remove her jacket.  *Id.*  Instead, the supervisor told Davis to

"wand" the plaintiff, which Davis could have done from the outset.  *Id.*  The plaintiff

was eventually allowed to enter the courthouse and go about her business.  *Id.*

The plaintiff in *West* filed a civil rights lawsuit against Davis under 42 U.S.C.

section 1983, claiming, *inter alia*, that Davis illegally seized her in violation of the

Fourth Amendment.  The District Court granted summary judgment to Davis based

upon qualified immunity. This Court reversed and stated that, "It is quite plain that the Fourth Amendment governs 'seizures' of the person which do not eventuate in a trip to the station house and prosecution for [a] crime" *Id*. at 1068 (internal citations omitted). "It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id*.

This Court also established that, "The restraint on one's freedom of movement does not have to endure for any minimum time period before it becomes a seizure for Fourth Amendment purposes." *Id*. at 1069. This Court concluded:

> Applying the Supreme Court's precedents defining seizure to the facts in the record construed in the light most favorable to West, ***it is clear*** that West was seized. Davis, a deputy sheriff, intentionally restrained her liberty of movement by physical force when he grabbed her hand, squeezed it, jerked and pulled her arm toward him, and wrenched her wrist back and forth. While Davis was applying physical force, albeit for only a brief time, West was surely not free to walk away or end the encounter and proceed about her business to the courtroom of the Fulton County Courthouse where she was to meet her client. If a short stop and frisk is a seizure, what happened here was surely a seizure as well.

Id. at 1070 (emphasis added).

*West* provided Perez and Luffi with "fair warning" that the totality of their conduct was unconstitutional. *Grayden,* 345 F.3d 1225, 1232. In many ways, Perez and Luffi's conduct is much worse than the officer in *West*. Perez and Luffi made false and defamatory statements against Ms. Gallego for over three years and told people that she was going to be arrested. They even tried to get people to "say

something against her." On the day in question, Perez and Luffi barged into a location where they had no right to be and refused to leave. They unlawfully threatened to confiscate unopened and un-tabulated election ballots. Comparatively, the officer in *West* did not even know the plaintiff, let alone act in such a malicious manner towards her.

Similar to the officer in *West*, Luffi flashed his handcuffs at Ms. Gallego and Perez made statements suggesting that Ms. Gallego was going to be arrested. When Ms. Gallego said or did something contrary to their liking, physical force was used against her to temporarily detain her. Although she was not arrested and eventually allowed to leave, Ms. Gallego was certainly "seized" for Fourth Amendment purposes. Accordingly, *West* undoubtedly provided Perez and Luffi with "fair warning" that their conduct was unconstitutional.

Even assuming, *arguendo*, that *West* is not "on all fours" with the facts here, the prior decisions from the this Circuit gave Perez and Luffi "reasonable warning that their conduct violated the Constitution." *Salvato v. Miley,* 790 F. 3d 1286, 1294 (11th Cir. 2015). This Circuit has repeatedly held that a seizure without probable cause "clearly" violates the Constitution. See *Redd v. City of Enterprise*, 140 F.3d 1378, 1382 (11 Cir. 1998)("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."); *Childs v. Dekalb Cty., Ga*., 286 F. App'x 687, 695 (11th Cir. 2008)("It has been clearly established since the

Supreme Court decided *Terry* that an investigative stop – a seizure for Fourth Amendment purposes – performed without reasonable suspicion violates the Fourth Amendment."); *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (a warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim) *citing Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *Wilkerson v. Seymour*, 736 F.3d 874, 977 (11th Cir. 2013) ("It is clearly established that an arrest made without probable cause violates the Fourth Amendment."). Accordingly, at the time of the incident, Perez and Luffi knew that "what [they were] doing [was] unlawful." See *D.C. Wesby*, 138 S. Ct. 577, 589 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.")(internal citations omitted).

Finally, qualified immunity is inapplicable because Perez and Luffi's conduct so obviously violates the Constitution that prior case law is unnecessary. *See Cooper v. Rutherford,* 2012 WL 4856122 (11th Cir. 2012). Viewing the facts in the light most favorable to Ms. Gallego, and drawing all inferences in her favor, Perez and Luffi are not entitled to qualified immunity. Perez and Luffi attempted to use their badge to strong-arm vendors and contractors to make false statement against Ms. Gallego, which was solely designed to manufacture probable cause to arrest her. When that did not work, Perez and Luffi forced their way into a closed election and

attempted to confiscate election ballots without probable cause or a search warrant. Ms. Gallego accused Perez and Luffi of committing their fraudulent activity to remove her from the board of directors so that someone close to Luffi could take her position. Ms. Gallego was forced to sit down. Perez and Luffi continued to mock Ms. Gallego publicly by flashing handcuffs towards her and stating, "I can't wait to sit in front of you and ask you questions." Viewing the facts in the light most favorable to Ms. Gallego, and drawing all inferences in her favor, Perez and Luffi's conduct obviously violates the Constitution – without any need for case law.

Similarly, Appellants misconstrue the holding in *Militello v. Sheriffof Broward Sheriff's Office*, 684 F. Appx. 809 (11th Cir. 2017). There, the Court held that an officer's singular statement that "I will do more than help you get up" did not establish another officer's duty to intervene in a later use of force. Notwithstanding the notable distinction that excessive force, not illegal seizures, was at issue in *Militello,* Appellants purport that this holding could mean that "conditional or ambiguous statements and gestures do not lead to Fourth Amendment liability." Furthermore, the officer in *Militello* was not found liable specifically because he "had no reason to expect the use of excessive force until after it had occurred, he had no reasonable opportunity to protect Lowe, and the obligation to take steps to protect him never arose." *Id.* at 814. *See O'Neill v. Krzeminski,* 839 F.2d 9, 11-12 (2d Cir.1988). Unlike the *Militello* officer, Perez and Luffi surely had a reason to expect

an illegal seizure—as they were present during the detention for several hours. They also had a reasonable opportunity and obligation to protect Ms. Gallego from this illegal detention, but instead, willfully failed to do so and directly participated in the illegal seizure.

Finally, Perez and Luffi claim that Mrs. Gallego's theory of liability raises a novel issue, and therefore, cannot fall under clearly established law. Assuming arguendo that Perez and Luffi are correct, this Circuit issued an opinion last year that eviscerates their "novel theory" argument. In *Hardigree v. Lofton*, 992 F.3d 1216, 1224 (11th Cir. 2021), the Court stated:

> [G]eneral statements of the law ***are not inherently incapable*** of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, ***even though 'the very action in question has [not] previously been held unlawful.***'(emphasis added, citation omitted)

This Circuit reiterated, "to determine if a right is clearly established, we ask whether the state of the law on the date of the alleged misconduct placed defendants on 'fair warning that their alleged treatment of [the plaintiff] was unconstitutional,' even in novel situations" *Id; quoting Hope v. Pelzer*, 536 U.S. 730, 741 (2002)("[O]fficials can still be on notice that their conduct violates established law even in novel factual circumstances."). The cases listed above, and others, provided "fair warning" to Perez and Luffi that their conduct was unconstitutional. *Grayden,* 345 F.3d 1225, 1232. Accordingly, at the time of the incident, Perez and Luffi knew that "what

[they were] doing [was] unlawful." See *D.C. Wesby*, 138 S. Ct. 577, 589 (2018) ("Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.")(internal citations omitted).  Perez and Luffi instigated, incited, caused, and/or participated in Mrs. Gallego's four-hour detention, knowing that they did not have reasonable suspicion or probable cause to detain her.  Perez and Luffi knew or should have known that their actions clearly violated the Constitution.  Accordingly, they are not entitled to qualified immunity. *Mowell v. City of Milton, Georgia*, 810 F. App'x 799, 803 (11th Cir. 2020)("qualified immunity does not offer protection if an official knew or should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff].")(internal citation omitted).

## II.    Officer Who *Instigate* or *Participate* Unlawful Seizures Are Not Entitled to Immunity.

Perez and Luffi essentially claim that they are entitled to qualified immunity because there is no case law "saying that the type of offhand comments and gestures alleged" against them can result in liability.  Regardless of how Perez and Luffi listed the issues in their Brief, they are essentially arguing that did not sufficiently participate in the March 6, 2018 election encounter.

In section 1983 cases, when a non-arresting officer denies liability for a constitutional violation committed by another officers, this Circuit requires lower courts to determine whether the officer sufficiently *instigated* or *participated* in the constitutional violation. *See Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007) ("In this Circuit, a non-arresting officer who instigates or causes an unlawful arrest can still be liable under the Fourth Amendment."); *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013) ("What is made explicit in *Jones* is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way."). The Defendants fail to acknowledge that officers who *contribute* to an illegal seizure are not entitled to immunity.

This Court decided the applicability of qualified immunity to non-arresting officers in *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999). In *Jones*, a detective named Powers telephoned a prosecutor to get advice on arresting a murder suspect. The prosecutor advised Powers that there was no probable cause for Jones's arrest for first-degree murder. *Jones*, 174 F.3d at 1283. Powers, and another detective named Bishop, arrested Jones for murder anyway, based on Jones's supposed later confession, which was the sole basis for the warrantless arrest. *Id*.

After his criminal case was dismissed, Jones filed a 1983 claim against Powers and Bishop for false arrest. Jones claimed that his confession to the murder was

fabricated and there was no probable cause to arrest him. *Id.* Bishop, the "non-arresting officer," moved to dismissed based upon qualified immunity. According to Bishop, he was not sufficiently involved in Jones's arrest to be held liable for false arrest. *Id.* at 1284. Bishop relied on the fact that Powers told Jones he was under arrest and that Powers prepared the police report. *Id.* However, Bishop stayed with Jones while Powers called the prosecutor about probable cause for an arrest and Bishop was present during the interview when Jones allegedly did not confess. *Id.* Bishop also took notes from which Powers prepared the police report about the arrest. This Court held that, viewed in the light most favorable to Jones, there was sufficient evidence to create a jury issue over whether Bishop participated in Jones's arrest, since he allegedly knew that that Jones had not confessed.

Here, Perez and Luffi argue that *Jones* is inapplicable. According to them, "the only real distinction between the two officers [in *Jones*] was that [sic] arresting officer informed the plaintiff he was under arrested [sic] and completed the arrest affidavit." The Appellants' position does not advance their argument. Here, the only distinction between Perez/Luffi and Garcia/Escobar is that the latter physically detained Mrs. Gallego, while the former ran the show and egged them on. There is no legitimate distinction between Jones and the instant case.

The important takeaway from *Jones* is that it clearly establishes the liability of non-arresting officers who sufficient participate in illegal detentions. Based on

*Jones*, Perez and Luffi's presence and actions during the four-hour illegal detention of Ms. Gallego creates a jury issue as to their participation in the seizure. The issue of fact becomes even greater when considering Officer Luffi's flashing of his handcuffs and Officer Perez saying multiple times to Mrs. Gallego, "I'm am going to be able to ask you questions!" "[T]he crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Thus, viewing the evidence in the light most favorable to Mrs. Gallego, Perez and Luffi's actions clearly *instigated, encouraged, incited, caused, or participated* in creating a reasonable perception that she was not free to leave.

This Court also discussed a non-arresting officer's potential liability under § 1983 in *Wilkerson v. Seymour*, 736 F.3d 974 (11th Cir. 2013). *Wilkerson* emphasizes the degree of participation in an arrest and the amount of information available to the non-arresting officer. *Id* at 980. The Court stated that, "What is made explicit in *Jones* is that a participant in an arrest, even if not the arresting officer, may be liable if he knew the arrest lacked any constitutional basis and yet participated in some way." *Id*.

A district court in this Circuit recently addressed a similar issue based on this Court's precedence. See *McDonough v. Mata*, No. 19-cv-21986-Moreno, 2020 WL

7350267 (S.D. Fla. Sept. 28, 2020). In *McDonough*, the plaintiff gave police officers the "bird." *Id.* at *11. Officer Wright instructed the plaintiff to stop, turn around, and place his hands behind his back. *Id.* When the plaintiff asked what he was being arrested for, another officer said, "for disorderly conduct," and the other officer placed handcuffs on the plaintiff. *Id.* A third officer then advised the plaintiff that he was under arrest and authored the arrest form. Officer Wright argued that, because he was not the arresting officer, the plaintiff failed to state a claim against him for a Fourth Amendment false arrest. *Id.* Applying the principles laid out by the this Court in *Jones*, *Jordan* and *Wilkerson*,[14] the *McDonough* court found that the allegations were sufficient to establish a jury question as to whether Officer Wright instigated or participated in the plaintiff's arrest. *Id.* at *12-13.

Here, although Perez and Luffi did not physically detain Ms. Gallego like Garcia and Escobar, Perez and Luffi's undoubtedly *caused*, *instigated* or *participated* in making Ms. Gallego feel as if she was not free to leave. Again, they made fraudulent statement about her, tried to get vendors to implicate her in a crime, told people that she was going to be arrested, barged into a closed election, refused to leave, told Garcia and Escobar that they were going to arrest her, attempted to

---

[14] *Jones v. Cannon*, 174 F.3d 1271, 1286 (11th Cir. 1999); *Jordan v. Mosley*, 487 F.3d 1350, 1354 (11th Cir. 2007); *Wilkerson v. Seymour*, 736 F.3d 974, 980 (11th Cir. 2013).

confiscate the ballot box, flashed handcuffs at her, and stated "I can't wait to sit in front of you and ask you questions." Based on the totality of the circumstances, Perez and Luffi sufficiently instigated or participated in Ms. Gallego's illegal detention. Accordingly, their claim of "bystander" immunity is meritless.

## CONCLUSION

Based on binding law in this Circuit, the court must affirm the lower court's order denying Appellants' motion to dismiss based on qualified immunity.

Respectfully Submitted,

Hilton Napoleon, II, Esq., FBN 17593
RASCO KLOCK PEREZ NIETO
2555 Ponce de Leon Blvd., Suite 600
Coral Gables, Florida 33134
Telephone: 305.476.7100
Facsimile: 305-476-7102
Email: hnapoleon@rascoklock.com

By: /s/ *Hilton Napoleon, II*____
        Hilton Napoleon, II

*Counsel for the Plaintiff, Marglli Gallego*

## CERTIFICATE OF FONT COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation set forth in Rule 32(a)(7) of the Federal Rules of Appellate Procedure. This brief contains 10,221 total words, including headings, and footnotes.

By: /s/ *Hilton Napoleon, II*
Hilton Napoleon, II

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 21, 2022, the foregoing document was served this day on all counsel of record or *pro se* parties, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing, and that four copies were mailed to the Clerk of Courts.

By: /s/ *Hilton Napoleon, II*
Hilton Napoleon, II