# CASE NO. 21-13212-HH

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

IVETTE PEREZ and CARLOS LUFFI,

*Defendants-Appellants*,

v.

MARGLLI GALLEGO,

*Plaintiff-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

L.T. CASE NO. 20-24374-BB

**REPLY BRIEF OF APPELLANTS**

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 NW 1st Street, Suite 2810
Miami, Florida 33128
Telephone: (305) 375-5151

By: Ezra S. Greenberg, Esq.
Assistant County Attorney
Attorney for Defendants-Appellants
Carlos Luffi and Ivette Perez

**Certificate of Interested Persons and**
**Corporate Disclosure Statement**

Pursuant to  Fed. R. App. P. 26.1 and Eleventh Circuit Rule 26.1, Appellants

Ivette Perez and Carlos Luffi certify that the following persons and entities may have

an interest in the outcome of this case:

1. Bloom, Beth, United States District Judge

2. Bonzon-Keenan, Geraldine Miami-Dade County Attorney

3. Gallego, Marglli, Appellee

4. Greenberg, Ezra, Counsel of Record for Appellants

5. Luffi, Carlos, Defendant/Appellant

6. Miami-Dade County

7. Miami-Dade County Attorney's Office

8. Napoleon, Hilton, Attorney for Appellee

9. Otazo-Reyes, Alicia M., United States Magistrate Judge

10. Pastor, Bernard, Assistant County Attorney

11. Perez, Ivette, Defendant/Appellant

12. Rosenthal, Oren, Assistant County Attorney

13. Walters, Rachel, Assistant County Attorney

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

14.   Zaron, Erica, Assistant County Attorney

Respectfully submitted,

/s/ Ezra S. Greenberg
Ezra S. Greenberg
Florida Bar No. 85018
Assistant County Attorney
Attorney for Appellants
Dated: April 26, 2022.

# Table of Contents

**Page**

CERTIFICATE OF INTERESTED PERSONS .......................................... C-1 of 2

TABLE OF CONTENTS.............................................................................i

TABLE OF CITATIONS ........................................................................ ii

ARGUMENT ........................................................................................1

I.     Gallego Did Not Meet Her Burden of Showing a Violation of a
Clearly Established Constitutional Right ........................................2

     A. The History of Appellants' Investigation into Gallego is Irrelevant to
Whether they Are Liable for Detaining Her on March 6, 2018 ................3

     B. Gallego's Reliance Upon General Propositions of Law is the Very Type
of Approach the Supreme Court Has Rejected ........................................8

     C. *West v. Davis* Shows that the Law Was Not Clearly Established in
Gallego's Favor ...........................................................................9

     D. Gallego Does Not Allege an "Obvious" Violation of the Constitution ...12

     E. *Jones v. Cannon*, *Jordan v. Mosley*, and *Wilkerson v. Seymour* Do Not
Clearly Establish that Appellants Committed a Constitutional Violation
.............................................................................................16

CONCLUSION.....................................................................................20

CERTIFICATE OF SERVICE ...............................................................21

CERTIFICATE OF COMPLIANCE.......................................................21

## Table of Citations

**Cases**                                                                                                       **Page(s)**

*Access Now, Inc. v. Sw. Airlines Co.*,
  385 F.3d 1324 (11th Cir. 2004) ...................................................................3

*Alcocer v. Mills*,
  906 F.3d 944 (11th Cir. 2018) ........................................................... 6, 8, 9

*Brooks v. Warden*,
  800 F.3d 1295 (11th Cir. 2015) .................................................................13

*Brower v. County of Inyo*,
  489 U.S. 593 (1989).................................................................................4, 9

*Cooper v. Rutherford*,
  503 F. App'x 672 (11th Cir. 2012) ............................................................8

*Corbitt v. Vickers*,
  929 F.3d 1304 (11th Cir. 2019) ................................................... 2, 5, 8, 18

*Crawford-El v. Britton*,
  523 U.S. 574 (1998)...................................................................................3

*Dukes v. Deaton*,
  852 F.3d 1035 (11th Cir. 2017) ........................................................ 12, 14, 15

*Echols v. Lawton*,
  913 F.3d 1313 (11th Cir. 2019) .................................................... 14, 15

*Gilmore v. Hodges*,
  738 F.3d 266 (11th Cir. 2013) ..................................................... 12, 13, 15

*Glasscox v. Argo, City of*,
  903 F.3d 1207 (11th Cir. 2018) .................................................................13

*J W by & through Tammy Williams v. Birmingham Bd. of Educ.*,
  904 F.3d 1248 (11th Cir. 2018) ..................................................................5

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

*Jones v. Cannon,*
    174 F.3d 1271 (11th Cir. 1999) ................................................................. passim

*Jordan v. Mosley,*
    487 F.3d 1350 (11th Cir. 2007) .........................................................................19

*King v. Pridmore,*
    961 F.3d 1135 (11th Cir. 2020) ...................................... 5, 7, 13, 14, 16

*Lee v. Ferraro,*
    284 F.3d 1188 (11th Cir. 2002) .........................................................................13

*Loftus v. Clark-Moore,*
    690 F.3d 1200 (11th Cir. 2012) .........................................................................12

*Marsh v. Butler Cnty., Ala.,*
    268 F.3d 1014 (11th Cir. 2001) ...........................................................................7

*McDonough v. Mata,*
    489 F. Supp. 3d 1347 (S.D. Fla. Sept. 28, 2020)........................................15

*Merricks v. Adkisson,*
    785 F.3d 553 (11th Cir. 2015) .................................................... 10, 11

*Mikko v. City of Atlanta, Ga.,*
    857 F.3d 1136, 1146-47 (11th Cir. 2017 .................................. 14, 18

*Moore v. Pederson,*
    806 F.3d 1036 (11th Cir. 2015).........................................................................17

*Oliver v. Fiorino,*
    586 F.3d 898 (11th Cir. 2009) .........................................................................13

*Priester v. City of Riviera Beach,*
    208 F.3d 919 (11th Cir. 2000) .........................................................................13

*Reichle v. Howards,*
    566 U.S. 658 (2012).........................................................................................20

*Rushing v. Parker*,
    599 F.3d 1263 (11th Cir. 2010) ...........................................................3

*Stephens v. DeGiovanni*,
    852 F.3d 1298 (11th Cir. 2017) .........................................................13

*Terrell v. Smith*,
    668 F.3d 1244 (11th Cir. 2012) ................................................... 12, 16

*Torres v. Madrid*,
    141 S. Ct. 989 (2021)......................................................................4, 9

*Troupe v. Sarasota County, Fla.*,
    419 F.3d 1160 (11th Cir. 2005) ......................................................4, 9

*United States v. Perez*,
    443 F.3d 772 (11th Cir. 2006) ................................................. 6, 16, 17

*Valdes v. Miami-Dade Cnty.*,
    No. 12-22426-CIV, 2016 WL 680816 (S.D. Fla. Feb. 18, 2016).........................5

*Valdes v. Miami-Dade County*,
    12-22426-CIV, 2013 WL 5429938 (S.D. Fla. Sept. 27, 2013),
    *aff'd,* 584 F. App'x 927 (11th Cir. 2014), ...........................................4

*Vinyard v. Wilson*,
    311 F.3d 1340 (11th Cir. 2002) ..................................... 10, 11, 13, 16

*West v. Davis*,
    767 F.3d 1063 (11th Cir. 2014) ......................................... 2, 9, 10, 11

*White v. Pauly*,
    137 S. Ct. 548 (2017)........................................................................8

*Wilkerson v. Seymour*,
    736 F.3d 974 (11th Cir. 2013) ...........................................................17

*Youmans v. Gagnon*,
    626 F.3d 557 (11th Cir. 2010) ..................................................... 12, 19

**Rules**

Fed. R. App. P. 26.1 ................................................................................... i

Fed. R. App. P. 32(a)(5)...........................................................................21

Fed. R. App. P. 32(a)(6)...........................................................................21

Fed. R. App. P 32(a)(7)(B) ......................................................................21

Fed. R. App. P. 32(f) ...............................................................................21

OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

**Argument**

Gallego does not dispute the salient facts underlying Appellants' qualified immunity defense: Appellants never ordered, instructed, directed, or authorized her detention, never physically restrained her, never assumed custody of her, and never gave commands restricting her freedom. She cites no controlling precedent that on March 6, 2018, Officer Perez's alleged statement that "I can't wait to put you in a chair and ask you questions" and Officer Luffi's purported gesture of flashing the handcuffs in his waistband makes them liable for other officers' detention. Instead, Gallego argues that Appellants were sufficient participants in her *Terry* stop, in that they instigated, caused, or somehow participated in it to make them equally liable with the officers who restrained her. But none of the authorities Gallego cites clearly dictate this outcome and none come close to establishing beyond debate that Appellants' actions—individually—could make them liable for other officers' *Terry* stop under the "novel facts" of this case.

To overcome Appellants' entitlement to qualified immunity, Gallego was required to show two things: (1) that Officer Perez's comment and Officer Luffi's gesture made them liable for Gallego's detention and (2) binding precedent that placed the constitutional question of whether Appellants' conduct rose to a Fourth Amendment violation beyond debate. But there is a conspicuous disconnect between the conduct that Gallego emphasizes—Appellants' alleged interactions with

vendors, homeowners, and contractors during their multi-year investigation, Appellants' alleged uninvited appearance at the HOA election meeting, and Appellants' alleged attempts to confiscate the election ballots—and the sole claim Gallego asserts against Appellants in the Second Amended Complaint—an unlawful *Terry* stop. Ultimately, the authorities she marshals simply do not compel the conclusion that Appellants crossed a "bright-line" staked out by prior precedent under this novel scenario. This Court should therefore reverse the district court and grant qualified immunity to Officer Perez and Officer Luffi.

## I. Gallego Did Not Meet Her Burden of Showing a Violation of a Clearly Established Constitutional Right

Because discretionary authority is uncontested, Gallego must demonstrate that qualified immunity does not apply. *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019). She attempts to meet her burden in several ways. First, she attempts to shoehorn the entire history of Appellants' investigation into her conduct as HOA President into the limited inquiry of whether their actions on March 6, 2018 constituted an unconstitutional *Terry* stop. Answer Br. 19-24. Second, she cites general propositions of law prohibiting warrantless *arrests* without probable cause. *Id.* at 25, 28-29. Third, she misconstrues the holding in *West v. Davis*, 767 F.3d 1063 (11th Cir. 2014), as clearly establishing an unlawful detention here. Answer Br. at 26-28. Fourth, she wrongly claims that Appellants' conduct so obviously violates

2
OFFICE OF COUNTY ATTORNEY, MIAMI-DADE COUNTY, FLORIDA
TELEPHONE 305.375.5151

the Fourth Amendment that no prior caselaw is necessary. *Id.* at 29-32. And finally, without citing any materially similar case, she contends that because Appellants allegedly participated in or instigated her seizure, they are not entitled to qualified immunity. *Id.* at 32-37. None of Gallego's arguments discharge her burden to show that qualified immunity does not apply under the facts she alleges.[1]

## A. The History of Appellants' Investigation into Gallego is Irrelevant to Whether they Are Liable for Detaining Her on March 6, 2018

Apparently realizing that what Appellants allegedly said and did before and during the alleged detention—Perez's statement that she "can't wait to put [Gallego] in a chair and ask [her] questions" and Luffi flashing his handcuffs—would be insufficient to abrogate qualified immunity, Gallego asks the Court to consider Appellants' actions during their three-to-four-year investigation of Gallego's

---

[1] To her credit, Gallego does not attempt to rely upon the Second Amended Complaint's conclusory allegations of causation, instigation, or participation, and instead focuses on the facts alleged. R.46 ¶¶ 85-59, 93-94, 98-108. It is therefore unnecessary to expound on why these conclusory allegations are insufficient to establish Appellants' culpability. R.53 at 14-16. On the other hand, Gallego strays considerably from the issue at hand—her alleged detention on March 6, 2018—in arguing that her post-incident arrest shows an "absence of mistake." Answer Br. at 9-10. It is not clear how events post-dating Gallego's alleged detention figure into the analysis. An officer's state of mind (i.e., their intent or lack of mistake) evokes subjective considerations which are not relevant for qualified immunity purposes. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998); *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010). In any event, this issue was waived since Gallego never raised it in response to Appellants' Motion to Dismiss the Second Amended Complaint. R.56; *see Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

conduct as President of the Hammocks HOA. Answer Br. 19-24. But since the constitutional standard is whether an officer manifests an ***objective*** intent to restrain, Appellants' conduct prior to the actual restraint and their alleged subjective desire to restrain Gallego is not relevant. *Torres v. Madrid*, 141 S. Ct. 989, 998 (2021); *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989); *Troupe v. Sarasota County, Fla.*, 419 F.3d 1160, 1166–67 (11th Cir. 2005).

Whether Appellants conducted the best or the worst investigation has nothing to do with whether they can be liable for Gallego's restraint on March 6, 2018. Gallego's claim is for an unlawful *Terry* stop—not that Appellants made defamatory comments about her (the subject of a separate lawsuit she filed against them in state court), not that Appellants trespassed on HOA property, and not that Appellants unsuccessfully requested to take the ballot box and election materials. None of those actions are constitutional violations that Gallego has or could assert as a basis for relief in her Second Amended Complaint.

In support of her argument that this extraneous conduct bears on whether Appellants can be liable for the alleged *Terry* stop, Gallego cites a district court's order on a motion to dismiss in *Valdes v. Miami-Dade County,* 12-22426-CIV, 2013 WL 5429938, at *1 (S.D. Fla. Sept. 27, 2013), *aff'd,* 584 F. App'x 927 (11th Cir. 2014), which the Court affirmed in an unpublished opinion. *Valdes* is a red herring. The key language Gallego block quotes on page 22 of the Answer Brief comes from

a later decision on a motion for summary judgment that Gallego does not even cite and that this Court never reviewed.[2]

In any event, a district court decision affirmed by an unpublished circuit opinion cannot clearly establish the law because neither is binding precedent. *Corbitt*, 929 F.3d at 1319; *J W by & through Tammy Williams v. Birmingham Bd. of Educ.*, 904 F.3d 1248, 1260 n.1 (11th Cir. 2018). The same of course holds true for an errant district court decision that was never appealed.

Gallego's point appears to be that because of her unique history with Appellants she did not feel free to leave the HOA meeting and has therefore abrogated qualified immunity for every officer on the scene. Answer Br. at 23-24. But the analysis depends neither on the subjective perception of the individual, nor the subjective intent of the officer. *Torres*, 141 S. Ct. at 998-99*; King v. Pridmore*, 961 F.3d 1135, 1146-47 (11th Cir. 2020) (explaining that the plaintiff's subjective

---

[2] Contrary to Gallego's representation, the block quote on page 22 of the Answer Brief is not from the district court's September 27, 2013 order and was never affirmed on appeal. The quoted language comes from a later order entered in February 2016, which held that an officer could be liable for a false arrest notwithstanding the existence of probable cause. *See Valdes v. Miami-Dade Cnty.*, No. 12-22426-CIV, 2016 WL 680816, at *6 (S.D. Fla. Feb. 18, 2016). This holding was wrong but never reviewed on appeal because the case, which the undersigned litigated, settled before appellate review could occur. It is startling that Gallego continues to inaccurately present the procedural posture of *Valdes* and claim that the quoted language was affirmed by this Court even after the errors in her presentation were twice pointed out in the district court. R.57 at 3-4 & n.3, R.72 at 29:3-25.

interpretation of the officers' words "is categorically not the standard that we must apply" to determine whether the officer violated clearly established law). And, moreover, the question here isn't whether Gallego was seized but who can be liable for the alleged seizure. *Cf. Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). Establishing liability for Appellants requires more than simply alleging an unlawful seizure by ***an*** officer on scene; if, as Gallego would have it, alleging a Fourth Amendment violation were enough to render liable every officer present, the entire analysis in *Jones v. Cannon*, 174 F.3d 1271, 1284-86 (11th Cir. 1999), concerning the second officer's involvement in the arrest and detention would have been unnecessary. Clearly established law must truly dictate that ***Appellants*'** conduct would make them liable for other officers' seizure. The first section of the Answer Brief provides no persuasive argument or authority that it did. Answer Br. 19-24.

While Gallego cites the traditional factors for determining whether a *Terry* stop occurred, Answer Br. at 20 (citing *United States v. Perez*, 443 F.3d 772, 778 (11th Cir. 2006)), she makes no attempt to analyze whether Officer Perez or Officer Luffi's individual conduct constitutes a sufficient show of authority under those factors. And she fails to point to precedent finding that conduct akin to what is alleged here would make Appellants liable. Instead, she proffers that based on the entire course of conduct a reasonable jury could infer that Officer Perez's statement influenced Officer Garcia's actions and Officer Luffi's flashing handcuffs was a

signal to keep Gallego detained. Answer Br. at 7-8 & n.9. But this argument—that a jury *could* conclude that Appellants acted unreasonably—is insufficient when qualified immunity is asserted. To overcome qualified immunity the facts pled must show that *every reasonable officer* would understand their actions to be violating a clearly established right, not merely that a reasonable jury could conclude that they did. That is what this Court, sitting *en banc*, explained twenty years ago:

> For a court to conclude that—in the light of the clearly established law at the pertinent time—a hypothetical jury, considering all the complaint's alleged facts as true, could decide that the defendant responded unreasonably is not sufficient to overcome the qualified immunity defense raised in a Rule 12(b)(6) motion. This formulation is nothing more than saying that reasonable people might or might not think—this is, could disagree about whether—the government actor behaved unreasonably. It is this kind of situation—that is, one where the alleged facts (accepted as true) leave the legal consequences uncertain—for which the defense of qualified immunity was designed.

*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1031 n.8 (11th Cir. 2001) (en banc) (abrogated on other grounds).

Within this framework, Gallego fails to show that on March 6, 2018, binding precedent signaled to *every reasonable officer* that what Officers Perez and Luffi allegedly said and did would make them liable for a *Terry* stop. *See King*, 961 F.3d at 1147 n.6 (granting qualified immunity because "all reasonable officers" would not necessarily interpret the statements in accordance with the plaintiff's position). That is, Gallego does not identify caselaw providing clear notice that all reasonable

officers would interpret the statement "I can't wait to put you in a chair and ask you questions" to order a detention, or the act of flashing handcuffs to prolong one.

### B. Gallego's Reliance Upon General Propositions of Law is the Very Type of Approach the Supreme Court Has Rejected

Gallego next argues that it is clearly established that a seizure without probable cause violates the Constitution. Answer Br. at 25, 28-29. But "an official's awareness of the existence of an abstract right does not equate to knowledge that his conduct infringes the right." *Corbitt*, 929 F.3d at 1312. Gallego's burden was to show clearly established law "particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (cleaned up). "Otherwise, [she] would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.*

Gallego's appeal to general principles regarding seizures without probable cause is misplaced for a second reason. The threshold issue here is not whether probable cause existed but whether Appellants' individual conduct makes them liable for a temporary seizure by two other officers. *See Corbitt*, 929 F.3d at 1313 ("it is a threshold question whether SDC was 'seized' at any point during his encounter with Vickers"); *Cooper v. Rutherford*, 503 F. App'x 672, 675 (11th Cir. 2012) (granting qualified immunity because it was not "clearly establishe[d] that a Fourth Amendment seizure occurred"); *see also Alcocer*, 906 F.3d at 951 (conduct

of each officer must be analyzed separately); *Jones*, 174 F.3d at 1284-86 (separately analyzing conduct of second officer).

This inquiry, in turn, is based on two objective standards: (1) whether Officer Luffi's gesture or Officer Perez's words objectively manifested an intent to restrain Gallego in the manner alleged, *Torres*, 141 S. Ct. at 998; *Brower*, 489 U.S. at 59; *Troupe*, 419 F.3d at 1166–67, and (2) whether controlling precedent clearly established the answer to question number one as to each officer, *Alcocer*, 906 F.3d at 951. But this Court's caselaw has not staked out a clear rule regarding when an officer who neither orders the detention nor assumes physical custody of a subject can be liable for a *Terry* stop effectuated by other officers. At most, the caselaw is ambiguous, which compels a finding of qualified immunity.

## C. *West v. Davis* Shows that the Law Was Not Clearly Established in Gallego's Favor

Gallego appears to agree that the case coming closest to our facts is *West*, 767 F.3d at 1063. *West* involved a *Terry* stop and Gallego acknowledges that Appellants' conduct here bears similarity to some of the officer's conduct in *West*: "Similar to the officer in *West*, Luffi flashed his handcuffs at Ms. Gallego and Perez made statements suggesting that Ms. Gallego was going to be arrested." Answer Br. 28; *see also West*, 767 F.3d at 1066. But Gallego ignores that *West's* analysis bypassed the conduct in common with this case, which strongly implies such conduct does not

transgress the Fourth Amendment. The Court's express holding was that a seizure

occurred only ***after*** the officer applied physical force by grabbing the plaintiff. *West*,

767 F.3d at 1070-71. The most straightforward reading of *West* therefore supports

Appellants' position: the alleged words and gestures did not violate the Fourth

Amendment. *West* undermines Gallego's central contention—that the Court must

consider all the conduct ancillary to the physical restraint to determine whether

Appellants are liable.

Because qualified immunity is asserted, even if the Court determined that

Gallego had the better reading of *West*, qualified immunity would still be warranted

because a reasonable officer could read *West* and conclude flashing handcuffs and

making statements such as "I can't wait to put you in a chair and ask you questions"

or "I am going to be able to sit down and ask you questions" would not make an

officer liable for a seizure. R. 46 ¶¶ 79, 107.

The facts this Court incorporates into or omits from its holdings are essential

in analyzing whether a particular legal principle has been clearly established for

purposes of qualified immunity. For example, in *Merricks v. Adkisson*, 785 F.3d 553,

560, 563-64 (11th Cir. 2015), the issue was whether the officer's decision to forcibly

"jerk" a driver out of the vehicle during a traffic stop was excessive force. The

closest case at the time was *Vinyard v. Wilson*, 311 F.3d 1340 (11th Cir. 2002),

which contained a similar allegation that the plaintiff had been "jerked" from her

vehicle. *Id.* at 1343. *Vinyard* held that excessive force occurred, but only when the officer grabbed the arrestee by the hair and arm, bruised her, and applied pepper spray to stop her from screaming obscenities during the ride to jail. *Id.* at 1355. *Vinyard* never mentioned the officer jerking the plaintiff out of the car during the initial stop in its excessive force analysis. *Id.*

Thirteen years later, *Merricks* found this omission critical to the clearly established inquiry because a reasonable officer could have read *Vinyard* and concluded that the initial removal from the vehicle was not a constitutional violation. *Merricks* explained the force incident to the initial removal from the vehicle "was not included in the conduct the [*Vinyard*] court condemned" when explaining that the officer used excessive force; the officer in *Merricks* was entitled to rely on that and receive qualified immunity for similar conduct. 785 F.3d at 564. Applying that reasoning here, a reasonable officer could read *West* for the proposition that the analogous conduct—flashing handcuffs and threatening arrest—did not violate the Constitution because *West* cited only the physical restraint when it discussed the conduct that violated the Fourth Amendment. 767 F.3d at 1070-71.

Applying the analysis in *Merricks*, a colorable reading of *West* is that Officer Perez and Officer Luffi's conduct and statements were insufficient to make them individually liable for seizing Gallego. More important still, *West* involved a single officer—it says nothing about whether liability can arise based on how one officer

on scene may interpret the gestures and comments of another. Because a reasonable officer could conclude from *West* that Appellants' alleged conduct does not create Fourth Amendment liability, *West* compels a finding of qualified immunity.

### D. Gallego Does Not Allege an "Obvious" Violation of the Constitution

Gallego's argument that she alleged an "obvious" violation of the Fourth Amendment must likewise be rejected. Answer Br. 29-32. On rare occasions, this Circuit has permitted plaintiffs to satisfy the second prong of qualified immunity by "point[ing] to a broader, clearly established principle that should control the novel facts of the situation." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012) (cleaned up). But to do so, the "principle must be established with obvious clarity by the case law so that *every* objectively reasonable government official facing the circumstances would know that the official's conduct" violated federal law. *Loftus*, 690 F.3d at 1205 (emphasis added) (quoting *Terrell*, 668 F.3d at 1255). To meet this burden, the "unlawfulness of a given act must be made truly obvious, rather than simply implied, by the preexisting law." *Youmans v. Gagnon*, 626 F.3d 557, 563 (11th Cir. 2010). Obvious clarity cases are "rare" and present a "narrow exception." *Gilmore v. Hodges*, 738 F.3d 266, 279 (11th Cir. 2013). The conduct must be truly "egregious," *Dukes v. Deaton*, 852 F.3d 1035, 1043 (11th Cir. 2017), "depraved" or "inhumane"

to avoid the general rule of qualified immunity. *Gilmore*, 738 F.3d at 279.

"In light of the rarity of obvious clarity cases, if a plaintiff cannot show that the law at issue was clearly established under the first (materially similar case on point) method, that usually means qualified immunity is appropriate." *King*, 961 F.3d at 1146. To prevent the exception from swallowing the rule, "obvious clarity" cases have generally been confined to extreme instances of excessive force against non-resisting subjects or other acts of unspeakable cruelty. *E.g.*, *Stephens v. DeGiovanni*, 852 F.3d 1298, 1323 (11th Cir. 2017) (excessive force); *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015) (forcing inmate to sit in feces); *Oliver v. Fiorino*, 586 F.3d 898, 907-08 (11th Cir. 2009) (excessive force); *Vinyard*, 311 F.3d at 1355 (excessive force); *Lee v. Ferraro*, 284 F.3d 1188, 1199 (11th Cir. 2002) (excessive force); *Priester v. City of Riviera Beach*, 208 F.3d 919, 927 (11th Cir. 2000) (excessive force); *see also Glasscox v. Argo, City of*, 903 F.3d 1207, 1218 (11th Cir. 2018) (explaining that the "obvious clarity" rule is a narrow exception applied in excessive force cases). The critical conduct here—stating "I can't wait to put you in a chair and ask you questions" and flashing handcuffs—is a far cry from cases invoking the obvious clarity exception.

Consequently, Gallego's argument devolves from a discussion of Appellants' conduct proximate to her detention into a general attack on their moral blameworthiness because of the alleged improprieties in the criminal investigation,

alleged unauthorized appearance at the HOA meeting, and alleged attempt to take the ballots during the HOA election. Answer Br. at 29-30. It is not obvious under prior caselaw that any of this is relevant to whether ***Appellants*** detained Gallego.

This unwarranted detour from the specific conduct contemporaneous with Gallego's detention into the moral turpitude of Appellants' alleged actions generally, does not invoke the obvious clarity exception. If moral blameworthiness were the standard, a host of Circuit precedents would have been decided differently. *See King*, 961 F.3d at 1146 (officers telling plaintiff they would "'throw some charges' on him if he didn't help with the ruse," "[if] you gonna start f\*\*king us over, we'll f\*\*k over you," "and that they were going to tow his girlfriend's car and they didn't know when or how he would be able to get it back" was not an obvious constitutional violation because "[i]t cannot be maintained that all objectively reasonable officers in their position would have known—*with obvious clarity*—that what they said, in context, would necessarily be understood as a threat of false criminal charges and physical violence in violation of the Constitution"); *Echols v. Lawton*, 913 F.3d 1313, 1324 (11th Cir. 2019) (violations of state tort law, including libel p*er se*, did not place constitutional question "beyond debate" for qualified immunity purposes); *Mikko v. City of Atlanta, Ga.*, 857 F.3d 1136, 1146-47 (11th Cir. 2017) (prosecutors' influencing employer to terminate employee because of adverse expert report and expected testimony was not a clearly established constitutional violation); *Dukes v.*

*Deaton*, 852 F.3d 1035, 1042-44 (11th Cir. 2017) (throwing flashbang grenades into a dark room where the occupants were asleep was excessive force but was not a clearly established constitutional violation); *Gilmore*, 738 F.3d at 278 (11th Cir. 2013) (failure to provide hearing aid to remedy substantial hearing loss was not an obvious constitutional violation and came nowhere close to the level of depravity needed to come within the obvious clarity exception). Qualified immunity gives ample breathing room when the law is uncertain, even when officers behave badly. *Echols*, 913 F.3d at 1325. Appellants conduct, as alleged, may be characterized as rude or unprofessional, but not depraved or inhumane.

Meanwhile, Gallego's citation to *McDonough v. Mata*, 489 F. Supp. 3d 1347 (S.D. Fla. Sept. 28, 2020), illustrates the very counterfactual of when an obvious, clearly established constitutional violation is alleged. In *McDonough*, one officer made an arrest after another officer "instructed Plaintiff ***to stop, turn around, and place his hands behind his back***." *Id.* at 1369 (emphasis added). These are the very type of clear, unambiguous commands that manifest an inarguable and objective intent to restrain; unlike the conduct alleged here, every officer and civilian understands these commands to immediately terminate the subject's liberty.

By contrast, Officer Luffi and Officer Perez were not engaged in obvious efforts to detain Gallego, either directly or through orders given to other officers. As noted above, the traditional hallmarks of a *Terry* stop are lacking with respect to

Appellants' conduct. They gave no commands to restrain Gallego's liberty, brandished no weapons, did not block or impede her path, and did not retain her identification. *See Perez*, 443 F.3d at 778. Nor did they subject her to questioning while she was allegedly detained by Officers Garcia and Escobar. Gallego's allegations that Officers Escobar and Garcia somehow fulfilled the subjective desires of Officers Perez and Luffi cannot overcome qualified immunity because every reasonable officer would not conclude that Appellants' actions, as alleged, would obviously lead to Gallego's immediate and prolonged detention. No prior caselaw makes it "truly obvious" to all reasonable officers that stating "I can't wait to put you in a chair and ask you questions" is tantamount to an order to detain or that flashing handcuffs is tantamount to an order to prolong a detention. *Cf. King*, 961 F.3d at 1147 n.6. Given the ambiguity created by *West* and *Jones*, it would be especially inappropriate to invoke the "obvious clarity" exception here.

### E. *Jones v. Cannon*, *Jordan v. Mosley*, and *Wilkerson v. Seymour* Do Not Clearly Establish that Appellants Committed a Constitutional Violation

Gallego relies on a trio of false arrest cases to abrogate qualified immunity here. Answer Br. 32-37. Only one case, *Jones*, addressed the issue of liability for a non-arresting officer, but it is "fairly distinguishable from the circumstances" alleged here, which means that qualified immunity applies. *Terrell*, 668 F.3d at 1256 (quoting *Vinyard*, 311 F.3d at 1351).

For one, *Jones* involved a full custodial arrest, police questioning and interrogation, and transportation to jail. Gallego concedes that "she was not arrested and eventually allowed to leave." Answer Br. at 28. This alone distinguishes *Jones*. In *Moore v. Pederson*, 806 F.3d 1036, 1039 (11th Cir. 2015), for example, the Court found that binding precedent prohibiting an in-home arrest absent exigent circumstances did not clearly establish that an in-home *Terry* stop lacking exigent circumstances was also unconstitutional. The law treats full-scale arrests and *Terry* stops differently. *Perez*, 443 F.3d at 777.

If that were not enough, *Jones* is "fairly distinguishable" because the secondary officer there did numerous things in the context of the full custodial arrest that neither Officer Luffi nor Officer Perez did here: participated in a custodial interview resulting in a fabricated confession, took notes from which the police report was prepared, and transported the plaintiff to the station. *Jones*, 174 F.3d at 1283-84.

*Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th Cir. 2013), highlighted these very specific facts from *Jones*—participating in a custodial interview, taking notes to create the report, and transporting the plaintiff to jail—before noting the absence of similar facts and reversing the district court's denial of summary judgment to a supervising officer accused of false arrest. *Wilkerson's* relevance in our analysis is that it interprets *Jones* to find the non-arresting officer liable for false arrest based

on actions that neither Appellant took here. Since *Jones* is the ***only*** Circuit precedent to evaluate and find liability for a secondary officer—and it is easily distinguishable—it can hardly be said that the outcome here is truly dictated by prior caselaw. While subsequent cases may yet interpret *Jones* to provide more guidance for officers in future cases, on March 6, 2018, the caselaw in this Circuit governing the discrete issue of liability for secondary officers for another officer's *Terry* stop was not sufficiently developed to find the law clearly established on the facts alleged here. Because Officer Luffi and Officer Perez did none of the things that made the second officer liable in *Jones*, it is "sufficiently distinguishable" such that it cannot clearly establish the unlawfulness of Appellants' conduct here. *Mikko*, 857 F.3d at 1146-47.

Lacking the level of particularity needed to clearly establish the law, Gallego emphasizes that *Wilkerson* also makes a general statement "that a participant in arrest," "may be liable if he knew the arrested lacked any constitutional basis any yet participated ***in some way***." 736 F.3d at 980 (emphasis added). But that is the very type of abstraction that does not clearly establish the law. Whatever creative analogies may be drawn to shoehorn Appellants' alleged conduct here into the holding of *Jones* are insufficient under the analytical framework of qualified immunity, because an officer can only be stripped of immunity when he has clear notice that his acts violated the Constitution. *Corbitt*, 929 F.3d at 1311. Since the

preexisting law does not "make it obvious that the defendant's acts violated the plaintiff's rights in the specific set of circumstances at issue," qualified immunity applies. *Youmans*, 626 F.3d at 563.

Finally, since neither *Wilkerson* nor *Jordan v. Mosley*, 487 F.3d 1350 (11th Cir. 2007), defines the level of participation required before a non-detaining officer faces exposure for an unlawful detention committed by another officer, they cannot clearly establish the law either. Their recitation of the general principle that a non-arresting officer may be liable for the arrest is mere dictum that provides no concrete facts and cannot abrogate qualified immunity in the unusual and novel scenario presented here. Gallego is forced to rely upon these inapposite cases because she lacks a case holding that an officer can be liable for a *Terry* stop he did not order merely because other officers subjectively interpreted his ambiguous words or gestures to request a detention.

Try as she may, Gallego cannot escape the reality that no case holds that the type of statements and gestures alleged here would necessarily be understood to require every reasonable officer in the vicinity to restrain and detain Gallego. There is simply a dearth of authority addressing liability for a secondary officer in the presence of a *Terry* stop—the most analogous case is *West* and it cuts against Gallego's position. On the other hand, it is quite clear that as of March 6, 2018, this Circuit did not recognize a failure to intervene claim outside of the excessive force

context. *See Jones*, 174 F.3d at 1286. The upshot is that Gallego has not met her burden of showing a clearly established constitutional violation for an unlawful detention by either Officer Luffi or Officer Perez. This case therefore presents an appropriate vehicle for the Court to bypass the first qualified immunity prong and grant qualified immunity without resolving the more difficult question of whether Officers Luffi and Officer Perez violated the Constitution at all. *See Reichle v. Howards*, 566 U.S. 658, 664 (2012).

## Conclusion

The district court's order denying Appellants' Motion to Dismiss the Second Amended Complaint should be reversed with instructions to dismiss the claims against Appellants based on qualified immunity.

DATE: April 26, 2022.

Respectfully submitted,

GERALDINE BONZON-KEENAN
Miami-Dade County Attorney
Stephen P. Clark Center
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128

By: /s/ Ezra S. Greenberg
Ezra S. Greenberg
Florida Bar No. 85018
Assistant County Attorney
Email: ezrag@miamidade.gov
Phone: (305) 375-5151
Attorney for Defendants/Appellants
Carlos Luffi and Ivette Perez

## Certificate Of Compliance

1. This document complies with the word limit of Fed. R. App. P 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains **4,968** words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2202 in Size 14, Times New Roman type style.

/s/ Ezra S. Greenberg
Assistant County Attorney

## Certificate Of Service

I certify that on **April 26, 2022**, this document was served on all counsel of record via Appellate ECF and that **four** copies were mailed to the Clerk, U.S. Court of Appeals for the 11th Circuit, 56 Forsyth St., N.W., Atlanta, Georgia 30303, via U.S. Mail first-class.

/s/ Ezra S. Greenberg
Assistant County Attorney